

1  JOHNSON BOTTINI, LLP
   FRANK J. JOHNSON (174882)
2  FRANCIS A. BOTTINI, JR. (175783)
   BRETT M. WEAVER (204715)
3  501 W. Broadway, Suite 1720
   San Diego, CA 92101
4  Telephone: (619) 230-0063          E-filing
5  Facsimile: (619) 238-0622

6  Attorneys for Plaintiff

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10 DAVID CLARKE, Derivatively on Behalf of   )  **0 9      5925**
   SunPower Corporation,                     )
11                                           )  **VERIFIED SHAREHOLDER**
                    Plaintiff,               )  **DERIVATIVE COMPLAINT FOR:**
12                                           )  **(1) BREACH OF FIDUCIARY**
          v.                                 )  **DUTY;**
13                                           )  **(2) VIOLATIONS OF CALIFORNIA**
   THOMAS H. WERNER, T.J. RODGERS, W.        )  **CORPORATIONS CODE § 25400 et**
14 STEVE ALBRECHT, BETSY S. ATKINS, UWE-     )  **seq.;**
   ERNST BUFE, THOMAS R. MCDANIEL, PAT       )  **(3) UNJUST ENRICHMENT; and**
15 WOOD III, DENNIS V. ARRIOLA, EMMANUEL     )  **(4) WASTE OF CORPORATE**
   T. HERNANDEZ, DANIEL S. SHUGAR,           )  **ASSETS**
16 DOUGLAS J. RICHARDS, BRUCE R. LEDESMA,    )
   MARTY T. NEESE, and DOES 1-20,            )  DEMAND FOR JURY TRIAL
17                                           )
                    Defendants,              )
18                                           )
          v.                                 )
19                                           )
   SUNPOWER CORPORATION,                     )
20                                           )
                    Nominal Defendant.       )
21                                           )

22

23

24

25

26

27

28

1    Plaintiff, by and through his attorneys, alleges the following upon information and

2    belief, except as to those allegations concerning Plaintiff, which are alleged upon personal

3    knowledge. Plaintiff's information and belief is based upon, among other things, his

4    counsel's investigation of publicly available information.

5                                    **SUMMARY OF THE ACTION**

6         1.      This is a shareholder derivative action on behalf of SunPower Corporation

7    ("SunPower" or the "Company") seeking to remedy the wrongs which occurred between

8    April 17, 2008 and the present (the "Relevant Period"). During the Relevant Period, certain

9    SunPower officers and members of the Company's board of directors (the "Board") violated

10   state law by breaching their fiduciary duties, unjustly enriching themselves at the expense of

11   the Company, wasting corporate assets and, in some instances, committing illegal insider sales

12   totaling nearly $20 million in proceeds.

13        2.      SunPower designs, manufactures, and markets solar power technologies. The

14   Company is an innovator and industry leader in the solar power field. Incorporated in 1985,

15   SunPower has partnered with the National Aeronautics and Space Administration and Honda on

16   projects that pioneered effective uses of solar power cells to propel both ground and air vehicles.

17   Recently, SunPower showcased its ability to sell massive installations of photovoltaic (PV)

18   power plants to power companies in the United States, including Pacific Gas & Electric and

19   Florida Power & Light Co. SunPower recently constructed solar cell fabrication facilities in the

20   Philippines to keep up with the soaring demand for solar power.

21        3.      Throughout the Relevant Period, the Individual Defendants (as defined herein)

22   caused the Company to issue false and misleading statements and fail to disclose several material

23   adverse facts about the Company's business, operations, and prospects. Specifically, the

24   Individual Defendants caused the Company to make false and/or misleading statements and/or

25   fail to disclose: (1) that the Company made unsubstantiated accounting entries during the

26   Relevant Period; (2) that, as a result, the Company's financial results were overstated in the

27   Relevant Period by at least $15 million; (3) that the Company's financial results were not

28

1  prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) that the
2  Company lacked adequate internal and financial controls; and (5) as a result of the above, the
3  Company's financial statements were materially false and misleading at all relevant times.

4      4.    On November 16, 2009, the Individual Defendants caused SunPower to disclose
5  an internal investigation by its Audit Committee into certain accounting errors relating to the cost
6  of goods sold ("COGS") in the Company's Philippines operations. This investigation caused the
7  Company to determine that the previously issued interim financial statements for each of the
8  2009 quarterly periods, the previously reported financial results for the fiscal year ending
9  December 28, 2008, the financial information in the quarterly reports on Form 10-Q for the
10  2009 quarters, the financial information in the 2008 annual report on Form 10-K, and the
11  guidance provided by the Company for the 2009 fiscal year should no longer be relied upon.
12  This will likely result, at a minimum, in a restatement of the Company's 2009 Form 10-Qs
13  and 2008 Form 10-K as well as a delay in filing the Company's 2009 Form 10-K.

14      5.    On this news, shares of SunPower's Class A common stock declined $5.04 per
15  share, or approximately 18.5%, to close on November 17, 2009 at $22.19 per share on heavy
16  volume, and shares of SunPower's Class B common stock declined $4.43 per share,
17  approximately 18.5%, to close on November 17, 2009 at $19.47 per share on heavy volume.

18      6.    The Individual Defendants' misconduct has damaged SunPower and its
19  shareholders. SunPower has been named as a defendant in at least three class action securities
20  fraud lawsuits. SunPower is contractually obligated to indemnify certain officers who are also
21  named as defendants in these class action suits. SunPower has incurred, or will incur, millions
22  of dollars in costs due to required internal investigations into the accounting errors, false
23  financial statements, and faulty internal controls. As disclosed on December 15, 2009, the
24  Company has also been forced to hire outside attorneys and auditors to serve as advisors to the
25  internal investigation. Additionally, the Company's goodwill and reputation have been
26  materially undermined and tarnished as a result of the accounting improprieties.

27

28

- 2 -
SHAREHOLDER DERIVATIVE COMPLAINT

1

**JURISDICTION AND VENUE**

2    7.    Jurisdiction is conferred by 28 U.S.C. § 1332. There is complete diversity
3 among the parties and the amount in controversy exceeds the sum or value of $75,000,
4 exclusive of interest and costs.

5    8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because SunPower
6 maintains its principal executive offices in this district, one or more of the defendants resides
7 in this district, a substantial portion of the transactions and wrongs complained of herein—
8 including the Individual Defendants' primary participation in the wrongful acts—occurred in
9 this district, and defendants have received substantial compensation in this district by doing
10 business here and engaging in numerous activities that had an effect in this district.

11

**PARTIES**

12    9.    Plaintiff David Clarke, as set forth in the accompanying verification, purchased
13 SunPower common stock on November 18, 2005, has held his shares continuously throughout
14 the relevant period, continues to hold such shares, and will hold shares of common stock in
15 SunPower during the pendency of this action. Plaintiff is a citizen of Washington.

16    10.    Nominal Defendant SunPower is a Delaware corporation with its principal
17 executive offices located at 3939 North First Street, San Jose, California, 95134.
18 Additionally, SunPower has offices in North America, Europe, Australia and Asia. SunPower
19 designs, manufactures and delivers cutting edge solar technology. Residential, business,
20 government and utility customers rely on the Company's experience and proven results to
21 maximize return on investment. SunPower previously operated as a subsidiary of Cypress
22 Semiconductor Corporation ("Cypress"). SunPower Class A common stock (Nasdaq:
23 SPWRA) has been publicly traded since November 17, 2005, and SunPower's Class B
24 common stock (Nasdaq: SPWRB) has been publicly traded since September 22, 2008.

25    11.    Defendant Thomas H. Werner ("Werner") was, at all relevant times, Chief
26 Executive Officer ("CEO") and a member of the Board and has been since 2003. In the
27 Relevant Period, Defendant Werner sold 185,320 shares of SunPower stock for $11,024,451

28

- 3 -

1    in proceeds while in possession of material non-public information. Upon information and
2    belief, Werner is a citizen of California.

3         12.    Defendant T.J. Rodgers ("Rodgers") was, at all relevant times, Chairman of the
4    Board and has been since 2002. Rodgers is the founder of Cypress and serves as its President
5    and CEO, as well as a member of its board. Upon information and belief, Rodgers is a citizen
6    of California.

7         13.    Defendant W. Steve Albrecht ("Albrecht") was, at all relevant times, a member
8    of the Board and has been since 2005. Albrecht is also the Board's Audit Committee
9    chairman, and the Company's designated financial expert. Albrecht previously served on the
10   Company's Nominating and Corporate Governance Committee during the Relevant Period.
11   Albrecht also serves on Cypress' board of directors as its audit committee chairman and
12   financial expert. In the Relevant Period, Defendant Albrecht sold 1,849 shares of SunPower
13   stock for $54,491 in proceeds while in possession of material non-public information. Upon
14   information and belief, Albrecht is a citizen of Utah.

15        14.    Defendant Betsy S. Atkins ("Atkins") was, at all relevant times, a member of
16   the Board and has been since 2005. Atkins is also a member of the Board's Compensation
17   Committee and Nominating and Corporate Governance Committee. Atkins previously served
18   on the Company's Audit Committee during the Relevant Period. In the Relevant Period,
19   Defendant Atkins sold 19,192 shares of SunPower stock for $849,790 in proceeds while in
20   possession of material non-public information. Upon information and belief, Atkins is a
21   citizen of Florida.

22        15.    Defendant Uwe-Ernst Bufe ("Bufe") was, at relevant times, a member of the
23   Board and has been since August 2008. Bufe is a member of the Board's Compensation
24   Committee and Nominating and Corporate Governance Committee. Upon information and
25   belief, Bufe is a citizen of New York.

26        16.    Defendant Thomas R. McDaniel ("McDaniel") was, at relevant times, a
27   member of the Board and has been since February 2009. McDaniel is also a member of the

28

- 4 -

SHAREHOLDER DERIVATIVE COMPLAINT

1 Board's Compensation Committee and Audit Committee. Upon information and belief,
2 McDaniel is a citizen of California.

3     17. Defendant Pat Wood III ("Wood") was, at all relevant times, a member of the
4 Board and has been since 2005. Wood is also a member of the Board's Audit Committee and
5 Compensation Committee as well as the Board's Nominating and Corporate Governance
6 Committee's chairman. Upon information and belief, Wood is a citizen of Texas.

7     18. Defendant Dennis V. Arriola ("Arriola") was, at relevant times, Chief Financial
8 Officer ("CFO") of SunPower and has been since November 2008. In the Relevant Period,
9 Defendant Arriola sold 7,780 shares of SunPower stock for $200,102 in proceeds while in
10 possession of material non-public information. Upon information and belief, Arriola is a
11 citizen of California.

12     19. Defendant Emmanuel T. Hernandez ("Hernandez") was, at relevant times, CFO
13 of SunPower. Hernandez served as SunPower's CFO from April 2005 through November
14 2008 and remained in a transition role shortly thereafter with the Company. In the Relevant
15 Period, Defendant Hernandez sold 25,572 shares of SunPower stock for $2,235,846 in
16 proceeds while in possession of material non-public information. Upon information and
17 belief, Hernandez is a citizen of California.

18     20. Defendant Daniel S. Shugar ("Shugar") was, at relevant times, President of
19 SunPower's subsidiary SunPower Corporation Systems (formerly known as PowerLight
20 Corporation prior to SunPower's acquisition of PowerLight Corporation). In the Relevant
21 Period, Defendant Shugar sold 39,460 shares of SunPower stock for $3,388,691 in proceeds
22 while in possession of material non-public information. Upon information and belief, Shugar
23 is a citizen of California.

24     21. Defendant Douglas J. Richards ("Richards") was, at relevant times, SunPower's
25 Vice President of Human Resources and Corporate Services. In the Relevant Period,
26 Defendant Richards sold 15,564 shares of SunPower stock for $739,270 in proceeds while in
27 possession of material non-public information. Upon information and belief, Richards is a

28

- 5 -
SHAREHOLDER DERIVATIVE COMPLAINT

1    citizen of California.

2        22.    Defendant Bruce R. Ledesma ("Ledesma") was, at relevant times, SunPower's
3    General Counsel. Defendant Ledesma sold 18,706 shares of SunPower stock for $1,087,671
4    in proceeds while in possession of material non-public information. Upon information and
5    belief, Ledesma is a citizen of California.

6        23.    Defendant Marty T. Neese ("Neese") was, at relevant times, SunPower's Chief
7    Operating Officer ("COO"). Defendant Neese sold 5,959 shares of SunPower stock for
8    $156,305 in proceeds while in possession of material non-public information. Upon
9    information and belief, Neese is a citizen of California.

10       24.    The Defendants Identified in ¶¶11- 17 are sometimes collectively referred to
11   herein as the "Director Defendants."

12       25.    The Defendants Identified in ¶¶11, 18-23 are sometimes collectively referred to
13   herein as the "Officer Defendants."

14       26.    The Defendants Identified in ¶¶11, 13, 14, 18-23 are sometimes collectively
15   referred to herein as the "Insider Selling Defendants."

16       27.    The Defendants Identified in ¶¶11-23 are sometimes collectively referred to
17   herein as the "Individual Defendants."

18       28.    The true names and capacities, whether individual, corporate, associate, or
19   otherwise, of Defendants named in this action as Does 1-20, inclusive, are unknown to
20   Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will amend
21   this complaint to show their true name(s) and capacities when they have been ascertained.
22   Plaintiff is informed and believes, and on that basis alleges, that each of these fictitiously-
23   named defendants is responsible in some manner for the occurrences herein alleged, and that
24   the nominal defendant's injuries as herein alleged were proximately caused by conduct of
25   these fictitiously-named defendants.

26       29.    Because of their high-level positions with SunPower, each Individual Defendant
27   directed the business of SunPower and had responsibility for, control of, and/or knowledge of

28

- 6 -
SHAREHOLDER DERIVATIVE COMPLAINT

1 the content and timing of all of SunPower's press releases, public filings, and other public
2 statements, including those described herein. Further, each Individual Defendant's position
3 gave him or her access to non-public information about SunPower's business, finances,
4 products, markets, and present and future business prospects. Each Individual Defendant also
5 knew that the unfavorable facts specified herein had not been disclosed to the investing public
6 and that the positive representations which were being made were both false and misleading.

7     30.    Plaintiff is informed and believes, and on that basis alleges, that at all relevant
8 times herein mentioned, each of the defendants was the agent, principal, representative, and/or
9 employee of each of the other defendants, and, in doing the things mentioned herein, was
10 acting within the scope of said agency, representation, and/or employment with permission of
11 each co-defendant.

12           **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

13     31.    In committing the wrongful acts alleged herein, the Individual Defendants have
14 pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert
15 with and conspired with one another in furtherance of their common plan or design. In
16 addition to the wrongful conduct herein alleged as giving rise to primary liability, the
17 Individual Defendants further aided and abetted and/or assisted each other in breaching their
18 respective duties.

19     32.    During all times relevant hereto, the Individual Defendants collectively and
20 individually initiated a course of conduct that was designed to and did: (i) conceal the fact
21 that the Company was improperly portraying its business prospects in order to allow the
22 Individual Defendants to artificially inflate the price of the Company's shares and sell nearly
23 $20 million of SunPower stock; (ii) maintain the Individual Defendants' executive and
24 directorial positions at SunPower and the profits, power, and prestige that the Individual
25 Defendants enjoyed as a result of these positions; and (iii) deceive the investing public,
26 including shareholders of SunPower, regarding the Individual Defendants' management of
27 SunPower's operations, the Company's financial health and stability, and future business

28

-7-
SHAREHOLDER DERIVATIVE COMPLAINT

1 prospects, specifically related to the Company's COGS accounting entries that had been
2 misrepresented by the Individual Defendants throughout the Relevant Period. In furtherance
3 of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and
4 individually took the actions set forth herein.

5      33. The Individual Defendants engaged in a conspiracy, common enterprise, and/or
6 common course of conduct commencing by at least April 17, 2008 and continuing thereafter.
7 During this time, the Individual Defendants caused the Company to conceal the true fact that
8 SunPower was substantially misrepresenting its COGS. In addition, the Individual
9 Defendants also made other specific, improper statements about SunPower's financial
10 performance and future business prospects, as alleged herein.

11      34. The Individual Defendants accomplished their conspiracy, common enterprise,
12 and/or common course of conduct by causing the Company to purposefully, recklessly or
13 negligently misrepresent its business prospects and release improper statements. Because the
14 actions described herein occurred under the authority of the Board, which to a certain extent
15 relies on the representations of the Company's officers, each of the Individual Defendants was
16 a direct, necessary and substantial participant in the conspiracy, common enterprise, and/or
17 common course of conduct complained of herein.

18      35. Each of the Individual Defendants aided and abetted and rendered substantial
19 assistance in the wrongs complained of herein. In taking such actions to substantially assist
20 the commission of the wrongdoing complained of herein, each Individual Defendant acted
21 with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that
22 wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

23                         **DUTIES OF THE INDIVIDUAL DEFENDANTS**

24      36. By reason of their positions as officers, directors and/or fiduciaries of
25 SunPower, and because of their ability to control the business and corporate affairs of
26 SunPower, the Individual Defendants owed the Company and its shareholders fiduciary
27 obligations of trust, loyalty, good faith, and due care, and were and are required to use their
28

1   utmost ability to control and manage SunPower in a fair, just, honest, and equitable manner.
2   The Individual Defendants were, and are, required to act in furtherance of the best interests of
3   SunPower and its shareholders so as to benefit all shareholders equally and not in furtherance
4   of their personal interest or benefit.

5        37.    Each director and officer of the Company owes to SunPower and its
6   shareholders the fiduciary duty to exercise good faith and diligence in the administration of
7   the affairs of the Company and in the use and preservation of its property and assets, and the
8   highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held
9   company, the Individual Defendants had a duty to promptly disseminate accurate and truthful
10  information with regard to the Company's revenue, margins, operations, performance,
11  management, projections and forecasts so that the market price of the Company's stock would
12  be based on truthful and accurate information.

13       38.    The Individual Defendants, because of their positions of control and authority as
14  directors and/or officers of SunPower, were able to and did, directly and/or indirectly, exercise
15  control over the wrongful acts complained of herein, as well as the contents of the various
16  public statements issued by the Company. Because of their advisory, executive, managerial
17  and directorial positions with SunPower, each of the Individual Defendants had access to
18  adverse non public information about the financial condition, operations, and improper
19  representations of SunPower.

20       39.    At all times relevant hereto, each of the Individual Defendants was the agent of
21  each of the other Individual Defendants and of SunPower, and was at all times acting within
22  the course and scope of such agency.

23       40.    To discharge their duties, the officers and directors of SunPower were required
24  to exercise reasonable and prudent supervision over the management, policies, practices and
25  controls of the financial affairs of the Company. By virtue of such duties, the officers and
26  directors of SunPower were required to, among other things:

27

28

-9-

1        (a)    refrain from acting upon material inside corporate information to benefit
2   themselves;

3        (b)    ensure that the Company complied with its legal obligations and requirements,
4   including acting only within the scope of its legal authority and disseminating truthful and accurate
5   statements to the SEC and the investing public;

6        (c)    conduct the affairs of the Company in an efficient, business-like manner so as
7   to make it possible to provide the highest quality performance of its business, to avoid wasting the
8   Company's assets, and to maximize the value of the Company's stock;

9        (d)    properly and accurately guide investors and analysts as to the true financial
10  condition of the Company at any given time, including making accurate statements about the
11  Company's financial results and prospects, and ensuring that the Company maintained an adequate
12  system of financial controls such that the Company's financial reporting would be true and accurate
13  at all times;

14       (e)    remain informed as to how SunPower conducted its operations, and, upon
15  receipt of notice or information of imprudent or unsound conditions or practices, make reasonable
16  inquiry in connection therewith, and take steps to correct such conditions or practices and make such
17  disclosures as necessary to comply with federal and state securities laws; and

18       (f)    ensure that the Company was operated in a diligent, honest and prudent
19  manner in compliance with all applicable federal, state and local laws, rules and regulations.

20  41.    Each Individual Defendant, by virtue of his or her position as a director and/or
21  officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith
22  and the exercise of due care and diligence in the management and administration of the affairs
23  of the Company, as well as in the use and preservation of its property and assets. The conduct
24  of the Individual Defendants complained of herein involves a knowing and culpable violation
25  of their obligations as directors and officers of SunPower, the absence of good faith on their
26  part, and a reckless disregard for their duties to the Company and its shareholders that the
27  Individual Defendants were aware or should have been aware posed a risk of serious injury to

28

- 10 -
SHAREHOLDER DERIVATIVE COMPLAINT

1 the Company.

2   42.   According to the Company, the primary role of the Board at the Company is to
3 oversee management by monitoring the performance of the CEO and other senior
4 management and to ensure that the best interests of shareholders are being served. To satisfy
5 this responsibility, the Board is expected to take a proactive approach to its duties and function
6 as active monitors of corporate management. Board members are required to provide
7 oversight in the formulation of the long-term strategic, financial and organizational goals of
8 the Company and of the plans designed to achieve those goals. In addition, the Board
9 oversees and reviews the standards and policies designed and implemented by senior
10 management to ensure that the employees and other constituents of the Company are
11 committed to achieving corporate objectives through the highest standards of responsible
12 conduct and ethical behavior and full compliance with legal requirements.

13   43.   In addition, the Audit Committee members owed specific duties because of the
14 added responsibilities of this Board subcommittee.

15   44.   Each member of the Audit Committee is required to be, and in fact is
16 represented by the Individual Defendants as, financially literate and have the requisite
17 financial sophistication as required by the applicable listing standards of the Nasdaq Global
18 Market.

19   45.   The Audit Committee held 10 meetings during 2008 to collectively perform
20 their duties and responsibilities.

21   46.   The purpose of the Audit Committee, pursuant to its charter, is to:

22       a)   provide oversight of the Company's accounting and financial reporting
23       processes and the audit of the Company's financial statements and internal
24       controls by the Company's independent registered public accounting firm;

25       b)   assist the Board in the oversight of:

26           i)   the integrity of the Company's financial statements;

27           ii)   the Company's compliance with legal and regulatory

28

- 11 -
SHAREHOLDER DERIVATIVE COMPLAINT

requirements;

iii)    the independent registered public accounting firm's performance, qualifications and independence; and

iv)    the performance of the Company's internal audit function;

c)    prepare an Audit Committee report as required by the Securities and Exchange Commission to be included in the Company's annual proxy statement; and

d)    provide to the Board such information and materials as it may deem necessary to make the Board aware of financial matters requiring the attention of the Board.

47.    The Audit Committee is also charged with developing and maintaining established procedures for: (1) the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and (2) the confidential, anonymous submission by SunPower employees of concerns regarding accounting or auditing matters. The Audit Committee is required to promptly review such complaints and concerns, if any. In 2008, the Audit Committee stated that none had been received.

48.    In addition, the Compensation Committee members owed specific duties because of the added responsibilities of this Board subcommittee.

49.    The Compensation Committee held 11 meetings during 2008.

50.    The Compensation Committee, pursuant to its charter, assists the Board in discharging its duties with respect to:

a)    the formulation, implementation, review, and modification of the compensation of the Company's directors and executive officers;

b)    the preparation of an annual report of the Compensation Committee for inclusion in the Company's annual proxy statement or Annual Report on Form 10-K, in accordance with applicable rules of the Securities and Exchange

SHAREHOLDER DERIVATIVE COMPLAINT

1    Commission and applicable listing standards of the Nasdaq Global Market; and

2         c)    reviewing and discussing the Compensation Discussion and Analysis

3    with the Company's management.

4    51.   In addition, the Nominating and Corporate Governance Committee members

5    owed specific duties because of the added responsibilities of this Board subcommittee.

6    52.   The Nominating and Corporate Governance Committee had 5 meetings in 2008.

7    53.   The Nominating and Corporate Governance Committee, pursuant to its charter,

8    assists the Board in discharging its responsibilities with respect to:

9         a)    the identification of individuals qualified to become directors and the

10    selection or recommendation of candidates for all directorships to be filled by

11    the Board or by the stockholders; and

12        b)    the development, maintenance and recommendation of a set of corporate

13    governance principles applicable to the Board, and for periodically reviewing

14    such principles.

15                      **SUBSTANTIVE ALLEGATIONS**

16                           **Background**

17    54.   SunPower was founded in 1985 by, among others, defendant Swanson.

18    Swanson served as the CEO from 1991 to 2003.

19    55.   SunPower designs, manufactures and markets high-performance solar electric

20    power technologies. The Company's solar cells and solar panels are manufactured using

21    proprietary processes, and its technologies are based on more than 15 years of research and

22    development. The Company operates in two business segments: systems and components.

23    The Systems Segment generally represents sales directly to system owners of engineering,

24    procurement, construction and other services relating to solar electric power systems that

25    integrate the Company's solar panels and balance of systems components, as well as materials

26    sourced from other manufacturers. The Components Segment primarily represents sales of the

27    Company's solar panels and inverters to solar systems installers and other resellers, including

28

- 13 -

1  the Company's third-party global dealer network.

2      56.    The Company was a majority-owned subsidiary of Cypress through September
3  29, 2008. After the close of trading on September 29, 2008, Cypress completed a spin-off of
4  all its shares of the Company's class B common stock in the form of a pro rata dividend to the
5  holders of Cypress common stock of record as of September 17, 2008. As a result, the
6  Company's Class B common stock trades publicly and is listed on Nasdaq, along with the
7  Company's Class A common stock.

8                          **Materially False and Misleading**
                      **Statements Issued During the Relevant Period**
9

10     57.    The Relevant Period begins on April 17, 2008. On April 17, 2008, the Individual

11 Defendants caused the Company to issue a press release entitled, "SunPower Reports First-

12 Quarter 2008 Results." This press release stated, in pertinent part:

     Company Raises FY 2008 Guidance
13   - Generated first quarter 2008 revenue of $274 million, up 92% year-on-year
     - Achieved $0.15 GAAP net income share, $0.39 Non-GAAP
14   - Extended VAR dealer network by more than 50 dealers in Germany, Italy and Spain
     - Expanded relationships to further penetrate both the Japanese and Korean markets
15   - Received silicon from M.Setek and DC Chemical on target

16   SAN JOSE, Calif., April 17, 2008 /PRNewswire-FirstCall via COMTEX News
17   Network -- SunPower Corporation (Nasdaq: SPWR) today announced financial
     results for the first quarter 2008, which ended March 30, 2008. This press release
18   contains both GAAP and non-GAAP financial information. Non-GAAP figures are
     reconciled to the closest GAAP equivalent figures on the final page of this press
19   release. Please note that the company has posted additional, supplemental
     information related to its first quarter 2008 performance on the Events and
20   Presentations section of the Investor Relations page on the SunPower website.

21
     Revenue for the 2008 first quarter was $273.7 million, up 22% from prior-quarter
22   revenue of $224.3 million and up 92% from year-ago first-quarter revenue of $142.3
     million. The Components and Systems segments accounted for 35% and 65% of
23   first-quarter revenue, respectively.

24
     For reporting purposes, the Systems segment generally represents products and
25   services sold directly to the system owner, while the Components segment primarily
     represents products sold to installers and resellers. Additionally, both SunPower and
26   third-party solar panels sold through the Systems segment channels are recorded as
     Systems segment revenue.
27

28
                                    - 14 -
                    SHAREHOLDER DERIVATIVE COMPLAINT

On a GAAP basis, SunPower reported gross margin of 19.5%, total operating income of $14.8 million and diluted net income per share of $0.15. These figures include non-cash operating expenses for amortization of purchase accounting intangible assets of $4.3 million and non-cash, stock-based compensation of $14.5 million. Additionally, for the three months ended March 30, 2008, GAAP cost of revenue includes $2.2 million of one-time asset impairment charges relating to the discontinuation of our imaging detector product line and $3.3 million for write-offs of certain solar manufacturing equipment which became obsolete due to new processes.

On a non-GAAP basis, adjusted to exclude non-cash charges for amortization of intangible assets, stock-based compensation, asset impairments and equipment write-offs, SunPower reported total gross margin of 24.0%, operating income of $39.1 million and diluted net income per share of $0.39. This compares with prior-quarter non-GAAP gross margin of 25.3%, total operating income of $32.4 million and $0.39 diluted net income per share. The first quarter's non-GAAP gross margin was influenced by a higher mix of revenue from our Systems segment which posted a gross margin of 23.3% for that quarter and our Component segment's 200 basis points sequential improvement over the 2007 fourth quarter gross margin to 25.4%. Our Component segment's gross margin benefitted from higher volume and modestly higher average selling prices. The increase in Components gross margin was tempered by stable silicon costs, rather than expected slightly declining silicon costs, as we secured incremental silicon supply to improve factory linearity in the first and second quarters of 2008. Looking forward to the second quarter, we expect our first meaningful reduction in average silicon cost which will contribute to our estimated 510 to 610 basis point improvement in our Component segment's gross margin.

"Our first quarter performance reflects the value our customers attribute to SunPower's high-performance solar solutions," said Tom Werner, SunPower's CEO. "SunPower's market leadership will continue to be driven through our focus on brand, technology, cost and people. We are building a strong brand based on sound fundamentals: the world's highest performance solar technology, deployed aggressively across the leading global markets using scalable, responsive channel platforms.

"During the first quarter of 2008, SunPower demonstrated the strength of its channel diversification. Our dealer network continued to expand, not only in the United States, but also in three key European markets as well: Germany, Italy and Spain. We now have more than 200 dealers serving residential and commercial rooftop markets globally with a rapidly increasing presence in Europe. In Asia, we expanded our customer footprint with our first volume shipments into Japan and shipment of components to Samsung in Korea. Our vertical integration strategy provides us with the visibility and flexibility to serve a variety of end-markets, responding quickly to both new market opportunities as well as risks.

"SunPower is positioned to meet the needs of the market with industry-leading solar technology across the entire customer spectrum — from large-scale systems designed for utilities and large commercial clients to homeowners. Our proprietary technology delivers the highest output per unit area of any commercially available solar system and we intend to leverage this technology by aggressively expanding our solar cell production by

more than 150% in 2008 compared to 2007. This scale, combined with lower silicon costs, higher efficiencies, thinner wafers and on-going quality and cost improvements in our factories, will drive unit cost reduction. During the first quarter of 2008, we continued to meet or exceed our manufacturing targets across both of our fabs and our panel manufacturing facility.

\* \* \*

"We expect SunPower's silicon supply costs to decline by approximately 10% during 2008 compared to 2007," continued Werner. "This cost improvement will amplify our silicon utilization benefits achieved through higher cell efficiency and thinner wafers. We are on track to achieve our planned improvements in our cost structure, and therefore we expect to reach our target financial model of 30% gross margin, 10% operating expenses and 20% operating margin, on a non-GAAP basis, no later than the first quarter of 2009. We are also on track to realize our mission of reducing installed systems cost by 50% by 2012.

"Based on the strong demand trends we saw in the first quarter of 2008, we are raising our guidance for the fiscal year 2008 and expect the following non-GAAP results: Total revenue of $1.3 billion to $1.375 billion, diluted net income per share of $2.10 to $2.20. We are also reconfirming our 2009 forecast for total revenue to increase at least 40% from 2008 levels. Consistent with our practice of offering guidance for the current quarter, we expect second quarter of 2008 non-GAAP total revenue of $330 million to $350 million, company non-GAAP gross margin of 23% to 24% and non-GAAP diluted net income per share of $0.48 to $0.52, reflecting a higher non-GAAP average tax rate of 24% to 25% in 2008 as compared to the tax rate in 2007 which ended at 11.0%(1).

"On a business segment basis, we expect the following non-GAAP results for the second quarter 2008: Components segment revenue of $95 million to $100 million, driven by a planned increase in allocation of SunPower panels to the Systems segment, and gross margin of 30.5% to 31.5%; Systems segment revenue of $235 million to $250 million and gross margin of 20% to 21%," said Werner. "We expect the Components segment to benefit from the continued manufacturing ramp of our next-generation technology and lower silicon cost and the Systems segment to benefit from an increase in allocation of SunPower panels to the segment during the quarter(2)."

[Footnotes omitted].

58.     On May 9, 2008, the Individual Defendants caused the Company to file its Quarterly Report with the SEC on Form 10-Q for the 2008 fiscal first quarter. The Form 10-Q reaffirmed the Company's financial results previously announced on April 17, 2008.

59.     The statements contained in ¶¶57-58 were materially false and/or misleading

- 16 -
SHAREHOLDER DERIVATIVE COMPLAINT

1    when made because the Individual Defendants failed to disclose the following:

2              (1) that the Company made unsubstantiated accounting entries during the

3              Relevant Period;

4              (2) that, as a result, the Company's financial results were overstated in the

5              Relevant Period by at least $15 million;

6              (3) that the Company's financial results were not prepared in accordance with

7              Generally Accepted Accounting Principles ("GAAP");

8              (4) that the Company lacked adequate internal and financial controls; and

9              (5) as a result of the above, the Company's financial statements were materially

10             false and misleading at all relevant times.

11        60.    On July 17, 2008, the Individual Defendants caused the Company to issue a press

12   release entitled, "SunPower Reports Second-Quarter 2008 Results." The press release stated, in

13   pertinent part:

14        Company Raises FY 2008 and FY 2009 Guidance
          - Generated second quarter 2008 revenue of $382.8 million, up 120% year- on-year
15        - Achieved $0.34 GAAP net income per share, $0.61 non-GAAP
          - Announced agreement with Florida Power & Light in July for two projects totaling 35
16        megawatts
          - Began site preparation for a 1 gigawatt solar cell fab in Malaysia
17        - On track with 50% cost reduction plan, Q2 reductions in cell, module, materials and
18        systems costs
          - More than 300 dealers worldwide serving the residential and small- commercial
19        rooftop market
          - Announced world-record 23.4% efficient, full-scale prototype Gen 3 solar cell
20        - Announced the appointment of Marty Neese as chief operating officer

21
          SAN JOSE, Calif., July 17, 2008 /PRNewswire-FirstCall via COMTEX News
22        Network/ -- SunPower Corporation (Nasdaq: SPWR) today announced financial
          results for the second quarter 2008, which ended June 29, 2008. This press release
23        contains both GAAP and non-GAAP financial information. Non-GAAP figures are
          reconciled to the closest GAAP equivalent figures on the final page of this press
24        release. Please note that the company has posted additional, supplemental
25        information related to its second quarter 2008 performance on the Events and
          Presentations section of the Investor Relations page on the SunPower website at
26        www.sunpowercorp.com.

27        Revenue for the 2008 second quarter was $382.8 million, up 40% from prior- quarter

28

- 17 -
SHAREHOLDER DERIVATIVE COMPLAINT

revenue of $273.7 million and up 120% from year-ago second-quarter revenue of $173.8 million. The Components and Systems segments accounted for 29% and 71% of second quarter revenue, respectively.

For reporting purposes, the Systems segment generally represents products and services sold directly to the system owner. Additionally, both SunPower and third-party solar panels sold through the Systems segment channels are recorded as Systems segment revenue. The Components segment primarily represents products sold to installers and resellers.

On a GAAP basis, for the 2008 second quarter, SunPower reported gross margin of 24.3%, total operating income of $45.0 million and diluted net income per share of $0.34. These figures include non-cash operating expenses for amortization of purchase accounting intangible assets of $4.0 million and non-cash, stock-based compensation of $18.6 million.

On a non-GAAP basis, adjusted to exclude non-cash charges for amortization of intangible assets and stock-based compensation, SunPower reported total gross margin of 26.4%, operating income of $67.6 million and diluted net income per share of $0.61. This compares with prior-quarter non-GAAP gross margin of 24.0%, total operating income of $39.1 million and $0.39 diluted net income per share. Overall gross margin rose sequentially benefitting from a 630 basis point improvement in the Components segment. Components gross margin rose to 31.7% due to lower silicon costs, higher volume and stable to slightly higher average selling prices. Additionally, the systems segment posted a gross margin of 24.2% reflecting a higher percentage of SunPower panels and cost reduction in field construction. Looking forward to the third and fourth quarter, the company expects continued improvement in company gross margin.

"In 2008, SunPower has achieved the geographic and market segment diversity that provides us with tremendous flexibility to respond to new opportunities and minimize risk, such as the uncertainty our industry currently faces in the U.S. and Spanish markets," said Tom Werner, SunPower's CEO. "We have built the infrastructure to deliver our high-efficiency solar technology to customers on four continents from residential rooftops to large- scale utility systems. With our Gen 2 cell lines ramping and further expansion of our manufacturing capabilities, we are beginning to tap unserved demand for our high-efficiency solar systems in Korea, Japan, Australia, Germany, Italy, and neighboring areas in Europe. The overall global business environment remains very favorable as we continue to execute on our long-term strategy focused on brand, technology, cost and people. We are well-positioned for success entering the second half of the year.

"In the second quarter, SunPower benefitted from strong customer demand across multiple geographies including our Systems business segment. In addition to our power plant installations in Spain, we saw the dedication of a 1.4 megawatt project in Korea as well as the announcement of our framework agreement with Enfinity

Management SPRL to supply 25 megawatts of projects in Italy by the end of 2009. Demonstrating SunPower's ability to offer solar at utility-scale, we announced an agreement with Florida Power & Light (FPL) for the largest photovoltaic power plant in the United States. Our agreements with FPL include both a 25 megawatt plant in DeSoto County, Fla., as well as a 10 megawatt plant at the Kennedy Space Center. Our power plant customers value SunPower's delivery of the highest-efficiency solar panels, high-energy collection systems technology, a decade of large-scale systems deployment experience, and a low levelized cost of energy (LCOE).

"In our Components business segment, we continued to see strong demand worldwide. We more than doubled the number of our European dealers and further grew our dealer base in the United States. SunPower now has more than 300 dealers worldwide serving the residential and small-commercial rooftop market. Our multi-channel approach, vertically integrated business model and diversified customer base gives us a competitive advantage and will enable us to capitalize on the further adoption of solar as an alternative to conventional electricity generation.

"SunPower continued to extend its technology lead during the quarter as we announced our world-record, 23.4 percent efficiency, prototype Generation 3 solar cell. This technology, expected to be in production in approximately two years, is a key element in our roadmap to reduce total systems costs to compete with wholesale and retail electric rates by 2012. Also, in order to meet expected future demand and scale economies to reach our cost reduction goals, SunPower announced plans to build its third solar cell manufacturing facility in Malaysia which, when completed, will have a nameplate capacity in excess of 1 gigawatt.

"Our cost reduction plans are on target for silicon procurement as well. We saw our silicon unit costs materially decline in the second quarter as we started to realize the benefit of our portfolio approach to silicon supply," continued Werner. "With all of our silicon suppliers delivering according to contract, we expect our silicon supply costs to continue to decline and remain fully contracted for our silicon needs through 2010. Per plan, SunPower also benefitted from reductions in cell manufacturing and module costs, improved materials sourcing and more efficient project management including the deployment of our next-generation SunPower$_{TM}$ T20 Tracker at our power plant projects in Spain.

"With the decline in our silicon costs, further improvements in our manufacturing efficiency and continued progress in reducing downstream installation costs, we remain on track to achieve our target financial model of 30% gross margin, 10% operating expenses and 20% operating margin, on a non-GAAP basis, no later than the first quarter of 2009. We are also on track to realize our mission of reducing installed systems cost by 50% from 2006 to 2012.

"Based on the strong demand trends in both existing and emerging markets and continued progress on our 50 percent reduction in installed system costs, we are

- 19 -

raising our guidance for the fiscal year 2008 and expect the following non-GAAP results: Total revenue of $1.39 billion to $1.44 billion and diluted net income per share of $2.26 to $2.36. We also expect our 2009 total revenue to be in of the range of $2.0 billion to $2.1 billion, production capacity of 450+ megawatts and non-GAAP diluted net income per share of at least $3.50. Consistent with our practice of offering guidance for the current quarter, we expect third quarter 2008 non-GAAP total revenue of $340 million to $355 million, company non-GAAP gross margin of 26.5% to 27.5% and non-GAAP diluted net income per share of $0.53 to $0.57.(1)

"On a business segment basis, we expect the following non-GAAP results for the third quarter 2008: Components segment revenue of $155 million to $160 million, and gross margin of 33.5% to 34.5%; Systems segment revenue of $185 million to $195 million and gross margin of 21.5% to 22%. We expect the Components segment to benefit from the continued manufacturing ramp of our next-generation technology and lower silicon cost and the Systems segment to reflect a combination of changes in project and regional mix. (2)

"For the fourth quarter of 2008, we expect non-GAAP total revenue of $395 million to $425 million, reflecting an anticipated increase in both our Components and Systems segment revenue, company non-GAAP gross margin of 29% to 30%, in line with the company's long-term model, and non-GAAP diluted net income per share of $0.73 to $0.80. For the fourth quarter 2008, we expect Components segment revenue of $200 million to $210 million, and gross margin of 35% to 36% and Systems segment revenue of $195 million to $215 million and gross margin of 23% to 23.5%," concluded Werner.(3)

[Footnotes omitted].

61.     On August 8, 2008, the Individual Defendants caused the Company to file its Quarterly Report with the SEC on Form 10-Q for the 2008 fiscal second quarter. The Form 10-Q reaffirmed the Company's financial results previously announced on July 17, 2008.

62.     The statements contained in ¶¶60-61 were materially false and/or misleading when made for the same reasons set forth in ¶59.

63.     On October 16, 2008, the Individual Defendants caused the Company to issue a press release entitled, "SunPower Reports Third-Quarter 2008 Results." The press release stated, in pertinent part:

-- Generated third quarter 2008 revenue of $377.5 million, up 61% year-on- year
-- Achieved $0.26 GAAP net income per share, $0.60 non-GAAP
-- Announced agreements with Pacific Gas and Electric Co., and Florida Power & Light Co., for power plants totaling 250 megawatts and 35 megawatts respectively

SHAREHOLDER DERIVATIVE COMPLAINT

– Grew residential and small-commercial rooftop dealer network by more than 25% sequentially

-- 500 systems representing 400 megawatts installed or under contract to date worldwide

– Dedicated 8.4-megawatt power plant in Isla Major, Spain - total Spanish systems exceed 165 megawatts completed or under contract

-- Completed Cypress Semiconductor distribution of SunPower class B shares

– Achieved free cash flow positive. Increased cash, cash equivalents and investments by $95 million in Q3, business plan fully funded.

SAN JOSE, Calif., Oct 16, 2008 /PRNewswire-FirstCall via COMTEX News Network – SunPower Corporation (Nasdaq: SPWRA, SPWRB) today announced financial results for the third quarter 2008, which ended September 28, 2008. This press release contains both GAAP and non-GAAP financial information. Non-GAAP figures are reconciled to the closest GAAP equivalent figures on the final page of this press release. Please note that the company has posted additional, supplemental information related to its third-quarter 2008 performance on the Events and Presentations section of the Investor Relations page located on the SunPower website at www.sunpowercorp.com.

Revenue for the 2008 third quarter was $377.5 million and compares to $382.8 million in the second quarter of 2008 and $234.3 million in the third quarter of last year. The Components and Systems segments accounted for 49% and 51 % of third quarter revenue, respectively.

For reporting purposes, the Systems segment generally represents products and services sold directly to the system owner. Additionally, both SunPower and third-party solar panels sold through the Systems segment channels are recorded as Systems segment revenue. The Components segment primarily represents products sold to installers and resellers.

On a GAAP basis, for the 2008 third-quarter, SunPower reported gross margin of 27.1%, total operating income of $50.2 million and diluted net income per share of $0.26. These figures include non-cash operating expenses for amortization of purchase accounting intangible assets of $4.2 million, and non-cash and stock-based compensation of $18.9 million.

On a non-GAAP basis, adjusted to exclude non-cash charges for amortization of intangible assets and stock-based compensation, SunPower reported total gross margin of 29.2%, operating income of $73.3 million and diluted net income per share of $0.60. This compares with prior-quarter non-GAAP gross margin of 26.4%, total operating income of $67.6 million and $0.61 diluted net income per share. Overall gross margin improvement reflected continued growth in Components segment gross margin. For the 2008 third quarter, Components segment gross margin reached 39.2%, benefitting from higher average conversion efficiency and better silicon utilization, continued reduction in silicon costs, higher volume, and slightly higher average selling prices. System segment gross margin was 19.7%, reflecting a shift in

SHAREHOLDER DERIVATIVE COMPLAINT

both geographic and product mix.

"In the third-quarter, SunPower continued to demonstrate the advantage of a multi-segment, multi-geographic, vertical integration strategy as we executed very well in an evolving policy environment," said Tom Werner, SunPower's CEO. "By leveraging our flexible model, we expanded our global footprint, opened up new markets and laid the foundation for long-term success. Overall, global industry fundamentals remain strong and demand is increasing across multiple geographies. Our cost reduction roadmap is paying dividends as we are now selling at a levelized cost of energy which is cost-effective for our customers as evidenced by our recent utility-scale announcements with Pacific Gas and Electric Co. (PG&E), and Florida Power & Light Co. With the recent extension of the U.S. Investment Tax Credit, we now have a national solar market in the U. S. with long-term visibility and significant additional demand potential in all three market segments - residential, commercial and utility. We also saw uncertainty removed from the Spanish market in the third quarter. These developments make us even more confident in our planned performance as we look into next year.

"In the Components business segment, during the third quarter, we grew our worldwide dealer network by more than 25 percent. This business is scaling very rapidly building on our multi-year investment in the infrastructure to serve a wide variety of markets using a core backbone of technology and services. With this channel investment, we offer our customers not only the best technology solutions but also the best customer experience which is a key platform for the SunPower brand. In addition, our Components business segment has further expanded its global footprint by delivering sales into the Middle East.

"Our Systems business segment recorded another strong quarter in the power plant and commercial rooftop segments. To date, SunPower has installed, or has under contract, more than 165 megawatts of solar capacity in Spain including our recent dedication announcement of our 8.4 megawatt project in Isla Major, Spain. Additionally, we continued to expand our leadership position in the U. S. commercial market as Applied Materials activated a two- megawatt combination of roof and parking lot systems at their corporate campus in the third quarter, and we completed the largest single roof solar installation in the U.S. for Toyota Motor Sales. We also announced a building-integrated solar system surrounding the Living Roof at the new California Academy of Sciences, and dedicated our SunPower PowerGuard$_{TM}$ system on the roof of the headquarters of the U. S. Department of Energy in Washington, D.C.

"Our cost reduction programs remain on track, enabling us to open up new markets such as the U.S. utility market where the combination of our tracking and industry leading cell technologies offer utilities a very competitive levelized cost of energy. In a watershed announcement for the industry, we were selected by PG&E to supply the California utility with 250-megawatts of solar power by 2012. This project will be the

first, true utility-scale photovoltaic power plant in the world when completed, delivering an average of 550,000 megawatt-hours of clean electricity annually. The project is contracted to begin power delivery in 2010 and be fully operational in 2012. This win demonstrates that photovoltaic technology is competitive with other utility-scale generation options today. SunPower's success in the utility- scale market is a direct result of our high-efficiency solar panels paired with high-capacity SunPower tracker technology, which generates up to 30 percent more energy than fixed tilt systems.

"Due to strong industry fundamentals, continued execution of our vertical integration strategy, expected gross margin expansion, and our progress on our cost reduction programs, we will materially meet our target operating model in the fourth quarter. We are strategically well positioned for 2009 and remain on track to realize our mission of reducing installed systems cost by 50% from 2006 to 2012.

"Based on the strong global demand trends that we are seeing, as well as our internal execution on our goal of reducing system installed costs by 50% from 2006 to 2012, we expect the following fiscal year 2008 non-GAAP results: total revenue of $1.44 billion to $1.46 billion and diluted net income per share of $2.34 to $2.41. Consistent with our practice of offering guidance for the current quarter, we expect fourth quarter 2008 non-GAAP total revenue of $405 million to $435 million, company non-GAAP gross margin of 29% to 30% and non-GAAP diluted net income per share of $0.73 to $0.80. We also expect our 2009 total revenue to be in of the range of $2.05 billion to $2.15 billion, production capacity of 450+ megawatts and non-GAAP diluted net income per share of at least $3.50 (1).

"On a business segment basis, we expect the following non-GAAP results for the fourth quarter 2008: Components segment revenue of $235 million to $255 million, and gross margin of 37% to 37.5%; Systems segment revenue of $170 million to $180 million and gross margin of 18% to 19% (2). We expect the Components segment to benefit from the continued manufacturing ramp of our next-generation technology and lower silicon cost and the Systems segment to reflect a combination of changes in project and regional mix," concluded Werner.

[Footnotes omitted].

64.     On November 7, 2008, the Individual Defendants caused the Company to file its Quarterly Report with the SEC on Form 10-Q for the 2008 fiscal third quarter. The Form 10-Q reaffirmed the Company's financial results previously announced on October 16, 2008.

65.     The statements contained in ¶¶63-64 were materially false and/or misleading when made for the same reasons set forth in ¶59.

66.     On January 29, 2009, the Individual Defendants caused the Company to issue a press release entitled, "SunPower Reports Record Fourth-Quarter and Fiscal Year 2008

Results." The press release stated, in pertinent part:

--Generated fourth quarter 2008 revenue of $401 million, up 79% year-on-year

--Recorded fiscal year 2008 revenue of $1.43 billion, up 85% year-on-year

--Achieved fourth quarter 2008 GAAP net income per share of $0.35, $0.70 non-GAAP

--Announced two multi-year agreements with European integrators totaling 230 megawatts

--Added more than 350 residential and small-commercial dealers worldwide in 2008

--Appointed Dennis Arriola as the company's new chief financial officer

--Maintained strong liquidity with over $436 million in cash and investments

--Expects fiscal year 2009 revenue of $1.6 billion to $2.0 billion

SAN JOSE, Calif., Jan 29, 2009 /PRNewswire-FirstCall via COMTEX News Network/ — SunPower Corporation (Nasdaq: SPWRA, SPWRB) today announced record financial results for its 2008 fourth quarter and fiscal year, which ended Dec. 28, 2008. Revenue for the 2008 fourth quarter was $401 million and compares to $378 million in the third-quarter of 2008 and $224 million in the fourth-quarter of last year. The Components and Systems segments accounted for 56% and 44% of fourth-quarter revenue, respectively.

"Our fourth-quarter performance reflects the continued strength of our vertically integrated business model, broad channel reach and geographic diversification," said Tom Werner, SunPower's CEO. "Our flexible model enables us to rapidly deploy our solutions across multiple geographies, especially in our worldwide dealer network where we continue to see strong demand both in the United States and Europe. Our Systems business also executed well in the fourth quarter as we commissioned dozens of large scale solar projects globally."

On a GAAP basis for the 2008 fourth quarter, SunPower reported gross margin of 27.9%, total operating income of $55 million and net income per diluted share of $0.35.

On a non-GAAP basis, adjusted to exclude non-cash charges for amortization of intangible assets of $4.2 million and stock-based compensation of $18.2 million, SunPower reported total gross margin of 29.9%, operating income of $77.5 million and net income per diluted share of $0.70. This compares with prior-quarter non-GAAP gross margin of 29.2%, total operating income of $73 million and $0.58 net income per diluted share. For the 2008 fourth quarter, Components segment gross margin was 35.6% and Systems segment gross margin was 22.7%. The company's GAAP and Non-GAAP fourth-quarter results include a $6.3 million, or $0.07 net income per diluted share, foreign currency gain related to its Korean joint venture.

"Long-term solar market fundamentals remain in place and we are encouraged by the commitment to renewable energy by President Obama and Congressional leadership," continued Werner. "Given these factors, we are well positioned to take advantage of growing global demand for solar this year and in the future, despite

- 24 -
SHAREHOLDER DERIVATIVE COMPLAINT

1    uncertainty in today's economic and credit environment."

2    2009 Guidance

3    The company expects the following fiscal year 2009 non-GAAP results: total
4    revenue of $1.6 billion to $2.0 billion, net income per diluted share of $2.20 to
     $2.80(1) and production capacity of more than 450 megawatts.

5    "The long-term solar industry fundamentals remain very positive and the company's
6    2009 sales pipeline is made up of identifiable customers and projects," said Dennis
     Arriola, SunPower's chief financial officer. "Given the continuing weak credit
7    environment, our ability to meet the high-end of the revenue and earnings-per-share
8    ranges will be dependent on improved access to the project financing markets. We
     expect our first-half of 2009 performance to be materially affected by seasonal
9    factors and the continuing impact of the credit crisis."

10    [Footnote omitted].

11    67.    On February 26, 2009, the Individual Defendants caused the Company to file its

12   Annual Report with the SEC on Form 10-K for the 2008 fiscal year. The Company's 10-K

13   reaffirmed the Company's financial results previously announced on January 29, 2009.

14    68.    The statements contained in ¶¶66-67 were materially false and/or misleading

15   when made for the same reasons set forth in ¶59.

16    69.    On April 23, 2009, the Individual Defendants caused the Company to issue a press

17   release entitled, "SunPower Reports First-Quarter 2009 Results." The press release stated, in

18   pertinent part:

19        -- Signed 3-year, 300 to 600 MW supply agreement with FPL Group in April 2009
20        -- Awarded 17 MW power plant agreement with Xcel Energy in April 2009
          -- Announced 8 MW power plant development agreement with Exelon in April 2009
21        -- Received regulatory approval of 210 MW power purchase agreement with Pacific
          Gas and Electric
22        --Booked more than $60 million in North American commercial systems projects
23        -- Began construction of SunPower's first Italian power plant with Api Nova

24        SAN JOSE, Calif., April 23, 2009 /PRNewswire-FirstCall via COMTEX News
          Network – SunPower Corporation (Nasdaq: SPWRA, SPWRB) today announced
25        financial results for its 2009 first quarter which ended March 29, 2009. Revenue for the
          2009 first quarter was $214 million and compares to revenues of $401 million in the
26        fourth quarter of 2008 and $274 million in the first quarter of last year. The
27        Components and Systems segments each accounted for 50% of first-quarter 2009

28

- 25 -

revenue.

"The first quarter of 2009 was the most challenging quarter we've seen since SunPower went public in 2005," said Tom Werner, SunPower's CEO. "Our quarterly performance was impacted by seasonality, the continuing effects of the credit crisis and difficult economic conditions. Despite these headwinds we were able to deliver strong gross margins in our Components business and positive non-GAAP net income. We have responded to current market conditions by moving to a demand-driven manufacturing model and reducing our planned operating expenses to align with our adjusted revenue outlook. Our recent announcements with FPL Group, Exelon and Xcel are representative of the range of opportunities in our utility and power plant business pipeline. Looking forward, we see positive trends emerging in a number of market segments, including the rooftop, distributed power plant and utility markets that give us confidence that we are well positioned for growth in the second half of 2009, 2010 and beyond.

"We were also pleased to announce today our expanded partnership with FPL Group through a significant supply agreement for future solar projects. This builds on our successful commencement of construction of the 25 megawatt DeSoto Next Generation Solar Energy Center in the first quarter of 2009. We look forward to working with FPL Group on future solar power plants around the country," Werner concluded.

On a GAAP basis for the 2009 first quarter, SunPower reported gross margin of 22.3%, an operating loss of $2.5 million and a net loss per share of ($0.06). GAAP net loss per share for the first quarter of 2009 includes a $5.0 million expense, or $0.06 per share, for non-cash charges related to adoption of new FASB accounting rule FSP APB 14-1, which impacts how companies account for interest expense on convertible bonds.

On a non-GAAP basis, adjusted to exclude non-cash charges for amortization of intangible assets of $4.1 million, stock-based compensation of $9.5 million and non-cash interest expense of $5.0 million, SunPower reported total gross margin of 24.3%, operating income of $11.5 million and net income per diluted share of $0.05. This compares with fourth-quarter 2008 non-GAAP gross margin of 29.9%, operating income of $77.5 million and $0.69 net income per diluted share. For the 2009 first quarter, Components segment gross margin was 29.5% and Systems segment gross margin was 19.0%.

2009 Guidance

The company expects the following fiscal year 2009 non-GAAP results: total revenue of $1.3 billion to $1.7 billion, net income per diluted share of $1.25 to $1.75 and production of up to 400 megawatts. The company also revised its 2009 capital expenditure outlook from $350 million - $400 million to $250 million - $300 million.

For the full year 2009, the company expects the following total company GAAP

1    results: revenue of $1.3 billion to $1.7 billion and net income per diluted share of
     $0.25 to $0.75. GAAP earnings per share guidance include approximately $0.20 per
2    share of expense for non-cash charges related to the adoption of FASB accounting
     rule FSP APB 14-1.
3

4    70.    On May 8, 2009, the Individual Defendants caused the Company to file its

5    Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal first quarter. The Company's

6    10-Q reaffirmed the Company's financial results previously announced on April 23, 2009.

7    71.    The statements contained in ¶¶69-70 were materially false and/or misleading

8    when made for the same reasons set forth in ¶59.

9    72.    On July 23, 2009, the Individual Defendants caused the Company to issue a

10   press release entitled, "SunPower Reports Second-Quarter 2009 Results." The press release

11   stated, in pertinent part:

12       -- Q2 2009 revenue of $298 million, GAAP EPS of $0.26 and non-GAAP EPS of $0.24
         -- Raised $458 million in a successful equity and convertible debt offering
13       -- Implemented a regional panel manufacturing strategy
14       -- Launched the company's new T5 fixed-tilt commercial roof mounting system
15       -- Substantially completed a 25 megawatt project for Florida Power & Light
         -- Expanded to approximately 600 SunPower dealers worldwide
16       -- Signed a $100 million commercial project financing agreement with Wells Fargo
         Bank
17

18       SAN JOSE, Calif., July 23, 2009 /PRNewswire-FirstCall via COMTEX News
         Network – SunPower Corp. (Nasdaq: SPWRA, SPWRB) today announced financial results
19       for its 2009 second quarter which ended June 28, 2009. Revenue for the 2009 second
20       quarter was $298 million which compares to revenues of $214 million in the first quarter
         of 2009 and $383 million in the second quarter of 2008. The company's Components and
21       Systems segments accounted for 63% and 37% of second-quarter 2009 revenue,
         respectively.
22

23       "Our second-quarter results reflect the continued success of our diversified segment
         and market strategy as we benefited from the further growth in our dealer network and
24       executed on our large scale project commitments," said Tom Werner,
         SunPower's CEO. "Additionally, our operational focus during the quarter enabled us to
25       show progress in reducing inventory levels and in controlling variable expenses. Our
         long-term strategy to build our brand based on superior experience, technology and
26       return is paying off. As a result, we have successfully adjusted pricing to maintain
27       market share and our price premium.

28

- 27 -
SHAREHOLDER DERIVATIVE COMPLAINT

"Overall, we recorded solid second-quarter results in a demand driven market, consistent with our operating plan. In all of our markets, we are encouraged by the improving industry trends we are seeing in both end demand and financing and we are well positioned for further growth in the second half of the year and 2010. Our manufacturing costs are competitive today and we are ahead of plan to achieve our cost reduction goals. Customers continue to choose SunPower due to our superior roof top and power plant experience, industry leading performance of our solar panels and tracking technology, and our ability to drive attractive project returns for our customers."

On a Generally Accepted Accounting Principle (GAAP) basis for the 2009 second quarter, SunPower reported gross margin of 19.6%, operating income of $9.9 million and net income per share of $0.26. GAAP net income per diluted share for the second quarter of 2009 includes a $21.2 million, or $0.21 per diluted share, non-taxable gain related to the company's recent securities offering and a $5.9 million, or $0.04 per diluted share for non-cash interest charges associated with the adoption of the new FSP APB 14-1 accounting rule, which impacts how companies account for interest expense on convertible bonds.

On a non-GAAP basis, adjusted to exclude non-cash charges for amortization of intangible assets of $4.1 million, stock-based compensation of $11.6 million and non-cash interest expense of $5.9 million, SunPower reported total gross margin of 22.6%. Gross margin for the second quarter was negatively impacted by approximately $12 million from lower factory utilization due to the company's planned transition to a demand driven manufacturing strategy, which successfully focused on reducing inventory levels. Operating income for the quarter was $26.8 million and net income per diluted share was $0.24. This compares with first quarter 2009 non-GAAP gross margin of 24.3%, operating income of $11.5 million and $0.05 net income per diluted share. For the 2009 second quarter, the Components segment non-GAAP gross margin was 24.6% and Systems segment gross margin was 18.9%.

Diluted shares outstanding for the second quarter of 2009 reflect the impact of the company's recent capital raise completed May 5, 2009.

2009 Guidance

The company adjusted its fiscal year 2009 total company non-GAAP guidance as follows: total revenue of $1.35 billion to $1.7 billion, which compares to previous guidance of $1.3 billion to $1.7 billion, net income per diluted share of $1.15 to $1.60 and production of approximately 400 megawatts. The company's 2009 capital expenditure outlook remains unchanged at $250 million to $300 million. Full year 2009 non-GAAP earnings per share guidance was adjusted to reflect the capital raise completed issuance of equity and convertible debt in May 2009.

"Our current pipeline and backlog gives us confidence that we will be able to meet our

1    second half 2009 guidance. This confidence stems from a number of large systems
2    we expect to have financed in the third quarter, as well as the positive trends we are
     seeing in the commercial and residential segments," said Dennis Arriola, SunPower's
3    CFO.

4    For fiscal year 2009, the company expects the following total company GAAP
     results: revenue of $1.35 billion to $1.7 billion and net income per diluted share of
5    $0.45 to $0.90. GAAP earnings per share guidance includes a $0.21 per share
     one-time, non-taxable gain related to the company's recent offering and an
6    approximately $0.12 expense for non-cash charges related to the company's previous
7    adoption of FASB accounting rule FSP APB 14-1.

8        73.    On August 3, 2009, the Individual Defendants caused the Company to file its

9    Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal second quarter. The Company's

10   10-Q reaffirmed the Company's financial results previously announced on July 23, 2009.

11       74.    The statements contained in ¶¶72-73 were materially false and/or misleading

12   when made for the same reasons set forth in ¶59.

13       75.    On October 22, 2009, the Individual Defendants caused the Company to issue a

14   press release entitled, "SunPower Reports Third-Quarter 2009 Results." The press release

15   stated, in pertinent part:

16       - Record Q3 2009 revenue of $466 million, record production of 110 megawatts
         - GAAP EPS of $0.13 and non-GAAP EPS of $0.42
17       - 24 megawatt Montalto power plant in Italy financed - expected completion Q4
         2009
18       - Grew global dealer network to approximately 900 partners
         - Signed a 14-megawatt supply agreement with Casino Group in France
19       - Commissioned 25-megawatt project for Florida Power & Light and began
20       construction of an additional 10-megawatt power plant
         - Fab 3 construction in Malaysia on plan; production scheduled for the second half of
21       2010
         - Further strengthened balance sheet - more than $800 million in cash and
22       investments

23       SAN JOSE, Calif., Oct 22, 2009 /PRNewswire-FirstCall via COMTEX News
24       Network – SunPower Corp. (Nasdaq: SPWRA, SPWRB) today announced financial
         results for its 2009 third quarter which ended September 27, 2009. Revenue for the
25       2009 third quarter was $466 million which compares to $298 million in the second
         quarter of 2009 and $378 million in the third quarter of 2008. The company's
26       Components and Systems segments accounted for 64% and 36% of third-quarter
27       2009 revenue, respectively.

28

- 29 -

"Our third-quarter results demonstrate the value of our diversified market and vertical integration strategy as we benefitted from our growing dealer channel and successfully executed on our large scale project commitments," said Tom Werner, SunPower's CEO. "We further expanded our dealer partner network into countries such as France, Korea and Canada, and added new partners to our existing markets. As we build our utility and power plant business around the world, our superior technology performance and rapid deployment capability continues to make SunPower a preferred partner with customers and financiers.

"Operationally, our global Engineering, Procurement and Construction team achieved a new record in the third quarter with more than 60 megawatts (MW) of SunPower power plants under construction. The 25-MW DeSoto power plant, commissioned for Florida Power & Light, has now surpassed Nellis Air Force Base as the largest operating solar photovoltaic power plant in North America. In Europe, the financing of our Montalto project, the largest power plant in Italy, demonstrates SunPower's bankability as a fully integrated supplier. With strong market demand continuing, all of our manufacturing facilities are now fully operational, resulting in unit cost reductions in line with our plan," concluded Werner.

On a Generally Accepted Accounting Principles (GAAP) basis for the 2009 third quarter, SunPower reported gross margin of 19.1%, operating income of $34.6 million and net income per diluted share of $0.13. GAAP net income per share for the third quarter of 2009 includes $5.3 million, or $0.03 per share, of non-cash interest charges associated with the adoption of the new accounting guidance, which impacts how companies account for interest expense on convertible bonds.

On a non-GAAP basis, adjusted to exclude non-cash charges for amortization of intangible assets of $4.1 million, stock-based compensation of $13.1 million and non-cash interest expense of $5.3 million, SunPower reported total gross margin of 20.7%. Operating income for the quarter was $52.1 million and net income per share was $0.42. This compares with second-quarter 2009 non-GAAP gross margin of 22.6%, operating income of $26.8 million and $0.24 net income per share. For the 2009 third quarter, the Components segment non-GAAP gross margin was 23.4% and Systems segment gross margin was 16.0%.
2009 Guidance

The company updated its fiscal year 2009 total company non-GAAP guidance as follows: total revenue of $1.425 billion to $1.50 billion, net income per diluted share of $1.15 to $1.25, capital expenditures of $200 million to $225 million, and production of approximately 400 MW.

"The company's continued focus on working capital management is showing positive results as we successfully managed inventory levels and ended the quarter with a stronger balance sheet and more than $800 million in cash and investments," said Dennis Arriola, SunPower's CFO. "Although the financing markets remain challenging, we're starting to see some improvement in the availability of financing for our projects. By starting the fourth quarter with a solid backlog of business and a growing pipeline of opportunities, we are confident that SunPower will finish the year

1    strongly and is well positioned for growth in 2010."

2    For fiscal year 2009, the company expects the following total company GAAP
3    results: revenue of $1.425 billion to $1.50 billion and net income per diluted share of
     $0.50 to $0.60. GAAP earnings per share guidance for 2009 includes a $0.21 per share
4    one-time, non-taxable gain related to the company's second-quarter 2009 capital
5    raise and approximately $0.13 per share for non-cash charges related to the company's
     adoption of new accounting guidance.

6         76.    On November 2, 2009, the Individual Defendants caused the Company to file its

7    Quarterly Report with the SEC on Form 10-Q for the 2009 fiscal third quarter.  The

8    Company's 10-Q reaffirmed the Company's financial results previously announced on

9    October 22, 2009.

10        77.    The statements contained in ¶¶75-76 were materially false and/or misleading

11   when made for the same reasons set forth in ¶59.

12                          **The Truth Begins to Emerge**

13        78.    On November 16, 2009, the Individual Defendants caused the Company to issue

14   a press release entitled, "SunPower Internal Review Identifies Unsubstantiated Accounting

15   Entries." The press release stated, in pertinent part:

16        SAN JOSE, Calif., Nov 16, 2009 /PRNewswire-FirstCall via COMTEX News
17        Network – SunPower Corp. (Nasdaq: SPWRA, SPWRB) today announced that
          based upon an internal review of its Philippine manufacturing operations, the
18        company believes there may have been unsubstantiated accounting entries made in
          the first three quarters of 2009, some of which relate to the company's fiscal year
19        ended December 28, 2008. Management informed the Audit Committee of the Board of
          Directors of these entries and the Audit Committee immediately commenced an
20        investigation of the matter, which is ongoing. The company's Audit Committee and
21        management have discussed these issues with the company's independent auditors.

22        *Based upon the preliminary findings of the ongoing investigation, the Audit*
23        *Committee to date has identified accounting entries in the Philippines that may have*
          *overstated expenses in its cost of goods sold of approximately $1 million in the first*
24        *quarter ending March 29, 2009, and understated expenses in its cost of goods sold*
          *of approximately $14 million in the second quarter ending June 28, 2009 and*
25        *approximately $2 million in the third quarter ending September 27, 2009.* The
26        company previously reported 2009 quarterly revenues and operating income under
          Generally Accepted Accounting Principles (GAAP) of $213.8 million and a loss of $2.5
27        million, respectively, in the first quarter, $297.6 million and $9.9 million,

28

                                     - 31 -

1    respectively, in the second quarter and $466.3 million and $34.6 million,
     respectively, in the third quarter. Full-year 2008 revenues were reported of $1,434.9
2    million and GAAP operating income of $167.5 million.

3
     *If the preliminary investigation findings prove to be final, they could impact the*
4    *company's previously reported interim 2009 financial results.* The company is also
     in the process of evaluating the financial impact of these adjustments on its
5    previously reported results for the fiscal year and interim periods ended December 28,
     2008. *The company currently estimates that approximately $9 million of the*
6    *identified accounting entries should have been recorded in 2008.*

7
     The company is working with the Audit Committee, the Committee's outside experts,
8    and with the company's independent auditors to determine if any restatements of the
     2009 interim financial reports and the 2008 annual report will be necessary. *Until the*
9    *investigation is complete and such a determination is made, there can be no*
     *assurance that broader issues do not exist. Therefore, the company's previously*
10   *issued interim financial statements for each of the 2009 quarterly periods, the*
     *previously reported financial results for the fiscal year ending December 28, 2008,*
11   *the financial information in its quarterly reports on Form 10-Q for the 2009 quarters,*
12   *the financial information in the 2008 annual report on Form 10-K, and the guidance*
     *provided by the company for the 2009 fiscal year, should no longer be relied upon.*
13   The company anticipates providing an update on the investigation within the next 30
14   days.

15
     Operationally, the company's outlook for the fourth quarter of 2009 remains
16   consistent with its previous expectations for sales and operating income, subject to any
     costs, charges, and tax-related impacts relating to the ongoing investigation.
17
18   [Emphasis added].

19        79.    Also on November 16, 2009, the Individual Defendants caused the Company to

20   file a Current Report with the SEC on Form 8-K disclosing the internal investigation and

21   attaching the above press release. This 8-K stated, in pertinent part:

22        On November 16, 2009, SunPower Corp. (the "Company") issued a press release
          announcing an internal investigation by its Audit Committee of certain
23        unsubstantiated accounting entries related to cost of goods sold in the Company's
24        Philippines operations. Such unsubstantiated accounting entries may affect the
          Company's previously reported financial results. The Company is working with its
25        Audit Committee, the Committee's outside experts and the Company's independent
          auditors to determine if any restatements of its 2009 interim financial reports and its
26        2008 annual report will be necessary.

27                             *        *        *
28

                                    - 32 -
                     SHAREHOLDER DERIVATIVE COMPLAINT

1

2

**Item 4.02.    Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**

3

4

5

6

7

8

9

10

11

On November 16, 2009, the Company issued a press release announcing an internal investigation by its Audit Committee of certain unsubstantiated accounting entries related to cost of goods sold in the Company's Philippines operations. The Company is working with its Audit Committee, the Audit Committee's outside experts and the Company's independent auditors to determine if any restatements of its 2009 interim financial reports and its 2008 annual report will be necessary. Until the investigation is complete and such a determination is made, there can be no assurances that broader issues do not exist. Therefore, on November 16, 2009 the Audit Committee concluded that the Company's previously issued interim financial statements for each of the 2009 quarterly periods, the previously reported financial results for the fiscal year ending December 28, 2008, the financial information in its quarterly reports on Form 10-Q for the 2009 quarters, the financial information in the 2008 annual report on Form 10-K, and the guidance provided by the Company for the 2009 fiscal year, should no longer be relied upon. The Company anticipates providing an update on the investigation within the next 30 days.

12

13

14

15

The Company and Audit Committee are also evaluating whether the accounting issues under investigation were the result of one or more material weaknesses in the operation of the Company's internal controls over financial reporting. The Company is discussing and will continue to discuss these matters with its independent registered accounting firm, PricewaterhouseCoopers LLP.

16

17

18

19

80.    On this news, shares of SunPower's Class A common stock declined $5.04 per share, approximately 18.51 %, to close on November 17, 2009 at $22.19 per share on heavy volume, and shares of SunPower's Class B common stock declined $4.43 per share, approximately 18.54%, to close on November 17, 2009 at $19.47 per share on heavy volume.

20

21

22

81.    On December 15, 2009, the Individual Defendants caused the Company to issue a press release entitled "SunPower Provides Update of Audit Committee Investigation." The press release stated, in pertinent part:

23

24

25

SAN JOSE, Calif., December 15, 2009 – SunPower Corp. (Nasdaq: SPWRA, SPWRB), a manufacturer of high-efficiency solar cells, solar panels and solar systems, today announced that the company has made significant progress in its internal investigation of unsubstantiated accounting entries previously announced on November 16, 2009.

26

27

The investigation is being conducted under the direction of the SunPower board of director's audit committee, with the assistance of outside legal and accounting experts. The investigation to date is consistent with the preliminary findings announced on November 16, 2009.

28

- 33 -
SHAREHOLDER DERIVATIVE COMPLAINT

1

2

> The audit committee is working with its experts and appropriate SunPower personnel
> to promptly complete a thorough investigation.

3    82.    The full extent of the Individual Defendants' culpable conduct has not yet been

4    disclosed.

5

6

### SUNPOWER'S VIOLATION OF GAAP RULES
### IN ITS FINANCIAL STATEMENTS
### FILED WITH THE SEC

7

8

9

10

11

83.    The financial statements and the statements about the Company's financial results detailed above were false and misleading, as the financial information was not prepared in conformity with GAAP nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about, its revenues.

12

13

14

84.    GAAP consists of principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.

15

16

17

18

19

20

85.    Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

21

22

23

86.    Given the accounting irregularities announced on November 16, 2009, the Company's reported financial results were in violation of GAAP and the following principles, among others:

24

25

26

(a)    The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

27

28

- 34 -
SHAREHOLDER DERIVATIVE COMPLAINT

(b)   The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

(c)   The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

(d)   The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

(e)   The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

(f)   The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g)   The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h)   The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business

- 35 -
SHAREHOLDER DERIVATIVE COMPLAINT

1
2

situations are adequately considered" was violated (FASB Statement of

Concepts No. 2, 95).

3      87.    Defendant Albrecht, as a trustee of the Financial Accounting Foundation that
4  oversees the Financial Accounting Standards Board and the Governmental Accounting
5  Standards Board, and because he is the former president of the American Accounting
6  Association, has intimate knowledge of GAAP. All other members of the Audit Committee
7  during the Relevant Period (defendants Atkins, McDaniel and Wood) were also required to be
8  financially literate and financially sophisticated as required by the applicable listing standards
9  of Nasdaq. As such, each Audit Committee member had or should have had comprehensive
10  knowledge of GAAP, and should have known the financial statements the Individual
11  Defendants caused the Company to issue violated GAAP.

12                              **DERIVATIVE ALLEGATIONS**

13     88.    Plaintiff brings this action derivatively for the benefit of SunPower to redress
14  injuries suffered, and yet to be suffered, by SunPower as a direct and proximate result of the
15  Individual Defendants' breaches of fiduciary duty, violations of California Corporations Code,
16  waste of corporate assets and unjust enrichment. SunPower is named in this action as a
17  Nominal Defendant solely in a derivative capacity.

18     89.    Plaintiff was a SunPower shareholder during the Relevant Period and continues
19  to hold shares of SunPower stock.

20     90.    Plaintiff will fairly and adequately represent the interests of the Company and
21  has retained competent counsel, experienced in derivative litigation, to enforce and prosecute
22  this action.

23     91.    This action is not a collusive one to confer jurisdiction on a court that it would
24  not otherwise have.

25     92.    A true and correct copy of the Complaint was delivered to SunPower before its
26  filing with the Court.

27
28

- 36 -

1

## IMPROPER PERSONAL FINANCIAL BENEFITS

2     93.     The Individual Defendants had knowledge of SunPower's problems and were

3  motivated to conceal such problems by performance-related bonuses and/or the opportunity to

4  sell personally held shares to the public while in possession of material, adverse, non-public

5  information.

6     94.     The Insider Selling Defendants engaged in the following illegal insider selling:

| Last Name | First Name | Position | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| | | | | **SALES** | | |
| Hernandez | Emmanuel | CFO | 04/25/2008 | 100 | 88.35 | 8,835 |
| | | | 04/25/2008 | 100 | 88.36 | 8,836 |
| | | | 04/25/2008 | 500 | 88.68 | 44,340 |
| | | | 04/25/2008 | 350 | 87.49 | 30,622 |
| | | | 04/25/2008 | 100 | 87.5 | 8,750 |
| | | | 04/25/2008 | 1,105 | 87.51 | 96,699 |
| | | | 04/25/2008 | 200 | 87.52 | 17,504 |
| | | | 04/25/2008 | 100 | 87.53 | 8,753 |
| | | | 04/25/2008 | 100 | 87.54 | 8,754 |
| | | | 04/25/2008 | 200 | 87.55 | 17,510 |
| | | | 04/25/2008 | 100 | 87.5575 | 8,756 |
| | | | 04/25/2008 | 400 | 87.56 | 35,024 |
| | | | 04/25/2008 | 100 | 87.57 | 8,757 |
| | | | 04/25/2008 | 230 | 87.58 | 20,143 |
| | | | 04/25/2008 | 100 | 87.6 | 8,760 |
| | | | 04/25/2008 | 100 | 87.61 | 8,761 |
| | | | 04/25/2008 | 622 | 87.63 | 54,506 |
| | | | 04/25/2008 | 300 | 87.6375 | 26,291 |
| | | | 04/25/2008 | 100 | 87.64 | 8,764 |
| | | | 04/25/2008 | 50 | 87.68 | 4,384 |
| | | | 04/25/2008 | 100 | 87.69 | 8,769 |
| | | | 04/25/2008 | 200 | 87.7 | 17,540 |
| | | | 04/25/2008 | 200 | 87.705 | 17,541 |
| | | | 04/25/2008 | 50 | 87.76 | 4,388 |
| | | | 04/25/2008 | 100 | 87.79 | 8,779 |
| | | | 04/25/2008 | 100 | 87.8 | 8,780 |
| | | | 04/25/2008 | 200 | 87.86 | 17,572 |
| | | | 04/25/2008 | 200 | 87.87 | 17,574 |
| | | | 04/25/2008 | 20 | 87.88 | 1,758 |
| | | | 04/25/2008 | 600 | 87.89 | 52,734 |
| | | | 04/25/2008 | 75 | 87.94 | 6,596 |
| | | | 04/25/2008 | 4,425 | 88 | 389,400 |
| | | | 04/25/2008 | 100 | 88.33 | 8,833 |
| | | | 04/25/2008 | 100 | 87.3 | 8,730 |

- 37 -
SHAREHOLDER DERIVATIVE COMPLAINT

| | | | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| 1 | | | 04/25/2008 | 200 | 87.31 | 17,462 |
| | | | 04/25/2008 | 101 | 87.32 | 8,819 |
| 2 | | | 04/25/2008 | 100 | 87.335 | 8,734 |
| 3 | | | 04/25/2008 | 200 | 87.3375 | 17,468 |
| | | | 04/25/2008 | 200 | 87.34 | 17,468 |
| 4 | | | 04/25/2008 | 100 | 87.3475 | 8,735 |
| | | | 04/25/2008 | 985 | 87.35 | 86,040 |
| 5 | | | 04/25/2008 | 215 | 87.36 | 18,782 |
| | | | 04/25/2008 | 1,599 | 87.37 | 139,705 |
| 6 | | | 04/25/2008 | 522 | 87.375 | 45,610 |
| 7 | | | 04/25/2008 | 2,701 | 87.38 | 236,013 |
| | | | 04/25/2008 | 300 | 87.385 | 26,216 |
| 8 | | | 04/25/2008 | 200 | 87.3875 | 17,478 |
| | | | 04/25/2008 | 358 | 87.39 | 31,286 |
| 9 | | | 04/25/2008 | 200 | 87.395 | 17,479 |
| | | | 04/25/2008 | 100 | 87.405 | 8,741 |
| 10 | | | 04/25/2008 | 200 | 87.4075 | 17,482 |
| 11 | | | 04/25/2008 | 100 | 87.41 | 8,741 |
| | | | 04/25/2008 | 100 | 87.415 | 8,742 |
| 12 | | | 04/25/2008 | 1,964 | 87.43 | 171,713 |
| | | | 04/25/2008 | 100 | 87.435 | 8,744 |
| 13 | | | 04/25/2008 | 100 | 87.4375 | 8,744 |
| | | | 04/25/2008 | 559 | 87.44 | 48,879 |
| 14 | | | 04/25/2008 | 240 | 87.45 | 20,988 |
| 15 | | | 04/25/2008 | 100 | 87.4575 | 8,746 |
| | | | 04/25/2008 | 600 | 87.46 | 52,476 |
| 16 | | | 04/25/2008 | 700 | 87.47 | 61,229 |
| | | | 04/25/2008 | 729 | 87.48 | 63,778 |
| 17 | | | 05/05/2008 | 572 | 80.1 | 45,817 |
| 18 | | **TOTAL** | | **25,572** | | **2,235,846** |

| Last Name | First Name | Position | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| | | | | **SALES** | | |
| **Shugar** | **Daniel** | **Pres.** | 04/22/2008 | 10,235 | 95 | 972,325 |
| | | | 04/22/2008 | 300 | 95.01 | 28,503 |
| | | | 04/22/2008 | 200 | 95.02 | 19,004 |
| | | | 04/22/2008 | 200 | 95.03 | 19,006 |
| | | | 04/22/2008 | 100 | 95.035 | 9,504 |
| | | | 04/22/2008 | 520 | 95.05 | 49,426 |
| | | | 04/22/2008 | · 300 | 95.08 | 28,524 |
| | | | 04/22/2008 | 100 | 95.1 | 9,510 |
| | | | 04/22/2008 | 200 | 95.1475 | 19,030 |
| | | | 05/14/2008 | 6,842 | 95 | 649,990 |
| | | | 05/14/2008 | 600 | 95.02 | 57,012 |
| | | | 05/14/2008 | 200 | 95.025 | 19,005 |

- 38 -

SHAREHOLDER DERIVATIVE COMPLAINT

| | | | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| | | | 05/14/2008 | 100 | 95.03 | 9,503 |
| | | | 05/14/2008 | 130 | 95.035 | 12,355 |
| | | | 07/21/2008 | 18,000 | 80.0173 | 1,440,311 |
| | | | 02/02/2009 | 1,013 | 31.88 | 32,294 |
| | | | 02/02/2009 | 420 | 31.88 | 13,390 |
| | | **TOTAL** | | **39,460** | | **3,388,691** |

| Last Name | First Name | Position | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| | | | | SALES | | |
| Richards | Douglas | VP, HR & | 09/11/2008 | 2,235 | 80.17 | 179,180 |
| | | Corporate | 09/11/2008 | 3,025 | 79.1331 | 239,378 |
| | | Services | 09/11/2008 | 100 | 80.12 | 8,012 |
| | | | 02/02/2009 | 901 | 31.88 | 28,724 |
| | | | 02/02/2009 | 350 | 31.88 | 11,158 |
| | | | 02/04/2009 | 113 | 33.71 | 3,809 |
| | | | 02/04/2009 | 500 | 33.82 | 16,910 |
| | | | 02/04/2009 | 1,200 | 33.85 | 40,620 |
| | | | 05/13/2009 | 890 | 26.5 | 23,585 |
| | | | 09/11/2009 | 2,235 | 29.15 | 65,150 |
| | | | 09/16/2009 | 4,015 | 30.5713 | 122,744 |
| | | **TOTAL** | | **15,564** | | **739,270** |

| Last Name | First Name | Position | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| Albrecht | W. Steve | Director | | SALES | | |
| | | | 08/05/2009 | 300 | 31.04 | 9,312 |
| | | | 08/07/2009 | 396 | 30.69 | 12,153 |
| | | | 08/11/2009 | 300 | 30.11 | 9,033 |
| | | | 08/11/2009 | 248 | 30.11 | 7,467 |
| | | | 11/11/2009 | 300 | 27.33 | 8,199 |
| | | | 11/11/2009 | 305 | 27.3 | 8,327 |
| | | **TOTAL** | | **1,849** | | **54,491** |

| Last Name | First Name | Position | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| | | | | SALES | | |
| Atkins | Betsy | Director | 05/07/2008 | 300 | 86.21 | 25,863 |
| | | | 05/07/2008 | 500 | 86.21 | 43,105 |
| | | | 05/12/2008 | 100 | 84 | 8,400 |
| | | | 05/12/2008 | 100 | 84 | 8,400 |
| | | | 05/12/2008 | 500 | 84 | 42,000 |
| | | | 06/10/2008 | 100 | 74.75 | 7,475 |
| | | | 06/10/2008 | 100 | 74.75 | 7,475 |
| | | | 06/10/2008 | 500 | 74.75 | 37,375 |
| | | | 06/10/2008 | 100 | 74.75 | 7,475 |

| Date | Shares | Price | Proceeds |
|---|---|---|---|
| 07/10/2008 | 100 | 65.5 | 6,550 |
| 07/10/2008 | 100 | 65.5 | 6,550 |
| 07/10/2008 | 500 | 65.5 | 32,750 |
| 07/14/2008 | 100 | 73.06 | 7,306 |
| 08/11/2008 | 100 | 73.06 | 7,306 |
| 08/11/2008 | 700 | 73.81 | 51,667 |
| 08/18/2008 | 1,000 | 92.41 | 92,410 |
| 09/10/2008 | 800 | 76 | 60,800 |
| 10/10/2008 | 600 | 38.2 | 22,920 |
| 10/13/2008 | 100 | 51.16 | 5,116 |
| 11/10/2008 | 600 | 35.47 | 21,282 |
| 12/10/2008 | 600 | 31.21 | 18,726 |
| 01/12/2009 | 600 | 39 | 23,400 |
| 02/10/2009 | 600 | 36 | 21,600 |
| 03/10/2009 | 100 | 25.6 | 2,560 |
| 03/10/2009 | 400 | 25.62 | 10,248 |
| 03/10/2009 | 100 | 25.63 | 2,563 |
| 04/13/2009 | 600 | 25.12 | 15,072 |
| 05/11/2009 | 600 | 28.19 | 16,914 |
| 06/10/2009 | 600 | 31.37 | 18,822 |
| 07/10/2009 | 600 | 23.54 | 14,124 |
| 08/10/2009 | 100 | 30.76 | 3,076 |
| 08/10/2009 | 400 | 30.66 | 12,264 |
| 08/10/2009 | 100 | 30.65 | 3,065 |
| 08/17/2009 | 4,992 | 26.6602 | 133,088 |
| 09/10/2009 | 100 | 27.58 | 2,758 |
| 09/10/2009 | 400 | 27.52 | 11,008 |
| 09/10/2009 | 100 | 27.51 | 2,751 |
| 10/12/2009 | 600 | 31.89 | 19,134 |
| 11/10/2009 | 600 | 27.32 | 16,392 |
| **TOTAL** | **19,192** | | **849,790** |

| Last Name | First Name | Position | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| Ledesma | Bruce | General Counsel | SALES | | | |
| | | | 01/16/2008 | 7,717 | 97.1043 | 749,354 |
| | | | 01/12/2009 | 3,893 | 34.89 | 135,827 |
| | | | 02/02/2009 | 798 | 31.88 | 25,440 |
| | | | 02/02/2009 | 298 | 31.88 | 9,500 |
| | | | 05/14/2009 | 1,000 | 25.25 | 25,250 |
| | | | 06/03/2009 | 1,000 | 29.95 | 29,950 |
| | | | 07/08/2009 | 1,000 | 23.92 | 23,920 |
| | | | 08/04/2009 | 1,000 | 31.96 | 31,960 |
| | | | 09/08/2009 | 1,000 | 26.72 | 26,720 |
| | | | 10/01/2009 | 1,000 | 29.75 | 29,750 |

SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | TOTAL | | 18,706 | 1,087,671 |

| Last Name | First Name | Position | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| Arriola | Dennis | CFO | SALES | | | |
| | | | 11/12/2009 | 7,780 | 25.72 | 200,102 |
| | | TOTAL | | 7,780 | | 200,102 |

| Last Name | First Name | Position | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| Neese | Marty | COO | SALES | | | |
| | | | 07/02/2009 | 5,959 | 26.23 | 156,305 |
| | | TOTAL | | 5,959 | | 156,305 |

| Last Name | First Name | Position | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|
| Werner | Thomas | CEO | SALES | | | |
| | | | 04/22/2008 | 32 | 92.35 | 2,955 |
| | | | 04/22/2008 | 100 | 92.36 | 9,236 |
| | | | 04/22/2008 | 2,000 | 92.37 | 184,740 |
| | | | 04/22/2008 | 2,000 | 92.55 | 185,100 |
| | | | 04/22/2008 | 100 | 92.57 | 9,257 |
| | | | 04/22/2008 | 1,668 | 92.66 | 154,557 |
| | | | 04/22/2008 | 3,309 | 92.67 | 306,645 |
| | | | 04/22/2008 | 200 | 92.675 | 18,535 |
| | | | 04/22/2008 | 91 | 92.68 | 8,434 |
| | | | 04/22/2008 | 200 | 92.69 | 18,538 |
| | | | 04/22/2008 | 1,000 | 92.695 | 92,695 |
| | | | 04/22/2008 | 3,000 | 92.74 | 278,220 |
| | | | 04/22/2008 | 2,300 | 92.77 | 213,371 |
| | | | 04/22/2008 | 100 | 92.79 | 9,279 |
| | | | 04/22/2008 | 500 | 92.8 | 46,400 |
| | | | 04/22/2008 | 2,400 | 92.81 | 222,744 |
| | | | 04/22/2008 | 2,735 | 92.82 | 253,863 |
| | | | 04/22/2008 | 1,751 | 92.83 | 162,545 |
| | | | 04/22/2008 | 100 | 92.84 | 9,284 |
| | | | 04/22/2008 | 2,114 | 92.85 | 196,285 |
| | | | 04/22/2008 | 200 | 92.86 | 18,572 |
| | | | 04/22/2008 | 264 | 92.87 | 24,518 |
| | | | 04/22/2008 | 100 | 92.88 | 9,288 |
| | | | 04/22/2008 | 1,800 | 92.92 | 167,256 |
| | | | 04/22/2008 | 100 | 92.93 | 9,293 |
| | | | 04/22/2008 | 1,100 | 92.94 | 102,234 |
| | | | 04/22/2008 | 600 | 92.97 | 55,782 |
| | | | 04/22/2008 | 200 | 92.99 | 18,598 |

SHAREHOLDER DERIVATIVE COMPLAINT

| | | | |
|---|---|---|---|
| 04/22/2008 | 268 | 93 | 24,924 |
| 04/22/2008 | 36 | 93.025 | 3,349 |
| 04/22/2008 | 3,000 | 93.06 | 279,180 |
| 04/22/2008 | 1,832 | 93.15 | 170,651 |
| 04/22/2008 | 170 | 93.25 | 15,853 |
| 04/22/2008 | 710 | 93.29 | 66,236 |
| 04/22/2008 | 1,290 | 93.39 | 120,473 |
| 04/22/2008 | 130 | 93.63 | 12,172 |
| 04/22/2008 | 126 | 93.7 | 11,806 |
| 04/22/2008 | 1,100 | 93.71 | 103,081 |
| 04/22/2008 | 200 | 93.715 | 18,743 |
| 04/22/2008 | 100 | 93.72 | 9,372 |
| 04/22/2008 | 1,574 | 93.76 | 147,578 |
| 04/22/2008 | 125 | 93.87 | 11,734 |
| 04/22/2008 | 975 | 94.22 | 91,865 |
| 04/22/2008 | 186 | 94.4 | 17,558 |
| 04/22/2008 | 10 | 94.42 | 944 |
| 04/22/2008 | 1,204 | 94.93 | 114,296 |
| 04/22/2008 | 700 | 94.99 | 66,493 |
| 04/22/2008 | 6,100 | 95 | 579,500 |
| 04/22/2008 | 100 | 95.02 | 9,502 |
| 07/22/2008 | 13,800 | 77.7837 | 1,073,415 |
| 07/22/2008 | 23,204 | 79.211 | 1,838,012 |
| 07/22/2008 | 12,996 | 80.0535 | 1,040,375 |
| 02/02/2009 | 5,319 | 31.88 | 169,570 |
| 02/02/2009 | 2,001 | 31.88 | 63,792 |
| 05/12/2009 | 22,917 | 26.9123 | 616,749 |
| 05/12/2009 | 2,083 | 28.35 | 59,053 |
| 07/24/2009 | 2,200 | 29.713 | 65,369 |
| 07/24/2009 | 16,500 | 31.2148 | 515,044 |
| 07/24/2009 | 6,300 | 31.9544 | 201,313 |
| 08/11/2009 | 3,000 | 0 | 0 |
| 10/23/2009 | 23,000 | 28.6395 | 658,709 |
| 10/23/2009 | 2,000 | 29.759 | 59,518 |
| **TOTAL** | **185,320** | | **11,024,451** |
| **TOTAL** | **319,902** | | **19,736,617** |

95.    The Insider Selling Defendants, because of their high-level positions at the Company, knew that the statements they caused the Company to make were false and misleading when made. They also knew that the misstatements would create an inflated stock price. The Insider Selling Defendants took advantage of this undisclosed information to sell

1  their personally-held stock for considerably more than the stock was worth. While in

2  possession of undisclosed material adverse information, the Insider Selling Defendants sold

3  319,402 shares of SunPower stock for $19.736, 617 million in proceeds.

4      96.   The Insider Selling Defendants were motivated to materially misrepresent to the

5  SEC and investors the true financial condition of the Company because deceiving the

6  investing public regarding SunPower's business, operations and management as well as the

7  intrinsic value of the Company's common stock enabled the Insider Selling Defendants to sell

8  $19,736,617 million in stock.

9      97.   In addition, the Individual Defendants collectively "earned" millions of dollars

10 in compensation during the Relevant Period, and were incentivized to breach their fiduciary

11 duties by the allure of incentive compensation. The Officer Defendants reaped many millions

12 of dollars in 2008 alone, while the Company's financial reporting was unreliable. The

13 following chart details defendants Werner, Arriola, Hernandez, Ledesma and Shugar's

14 compensation for 2008:

| Name | Salary | Bonus | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total ($) |
|------|--------|-------|--------------|---------------|----------------------------------------|------------------------|-----------|
| Werner | 362,466 | -- | 3,104,598 | 160,571 | 678,915 | 9,307 | 4,315,857 |
| Arriola | 57,212 | 300,000 | 53,004 | 23,647 | -- | 12,686 | 446,549 |
| Hernandez | 336,533 | -- | 1,015,340 | 35,039 | 236,933 | 6,851 | 1,630,696 |
| Ledesma | 251,924 | -- | 1,436,310 | -- | 115,367 | 11,592 | 1,815,193 |
| Shugar | 264,874 | -- | 7,938,592 | -- | 123,346 | 11,754 | 8,338,566 |

## DEMAND IS EXCUSED FOR FUTILITY

21     98.   Plaintiff incorporates by reference and realleges each and every allegation

22 stated above as if fully set forth herein. Plaintiff did not make a demand on the Board to

23 bring this action because such demand would be futile given the facts as alleged herein and,

24 therefore, such a demand is excused.

25     99.   The current Board of SunPower consists of the following seven individuals:

26

27 defendants Rodgers, Werner, Albrecht, Atkins, Bufe, McDaniel and Wood.

28

1    100.    Because of defendants Werner's and Rodgers' current high level employment

2    positions at the Company, they are not independent. This fact is conceded in SunPower's

3    financial statements, including, for example, the Company's 2008 Annual Proxy.

4    101.    Defendant Albrecht serves as a member of Cypress' board of directors and is

5    the chairman of Cypress' audit committee. Albrecht's service on both boards creates a

6
7    professional conflict for Defendant Albrecht, because he will not sue defendant Rodgers,

8    who is the CEO, founder and President of Cypress.

9    102.    The Audit Committee's charter provides that the Audit Committee is

10   responsible for many duties and responsibilities, including those described above. These

11   duties and responsibilities made defendants Albrecht, McDaniel and Wood responsible for

12   overseeing and directly participating in the dissemination of SunPower's financial results

13   and guidance. These duties, coupled with the Audit Committee's ten meetings in 2008 alone

14   (and likely a substantially similar number in 2009), made defendants Albrecht, Atkins,

15   McDaniel and Wood acutely aware of the accounting problems that adversely affected the

16   Company's earnings and guidance that were revealed on November 16, 2009 to be

17   unreliable. Thus, these defendants breached their fiduciary duties of due care, loyalty and

18   good faith because they participated in the preparation of improper financial statements and

19   earnings press releases that contained improper material information.

20   103.    Particularly, defendants Albrecht, Atkins, McDaniel and Wood—all of whom

21   hold themselves out to the public as financially literate and financially sophisticated—

22   reviewed and failed to correct SunPower's improper statements described above. Thus,

23   defendants Albrecht, Atkins, McDaniel and Wood face a sufficiently substantial likelihood

24   of liability for their breach of fiduciary duties, rendering any demand upon them futile.

25
26
27
28

- 44 -
SHAREHOLDER DERIVATIVE COMPLAINT

104. The Compensation Committee is responsible for many duties and responsibilities, including those described above. Particularly, defendants Atkins, Bufe, McDaniel and Wood, as members of the Compensation Committee in the Relevant Period, were tasked with recommending and approving the excess compensation given to each of the Individual Defendants. Thus, defendants Atkins, Bufe, McDaniel and Wood face a sufficiently substantial likelihood of liability for their breach of fiduciary duties, rendering any demand upon them futile.

105. The Nominating and Corporate Governance Committee is responsible for many duties and responsibilities, including those described above. Specifically, defendants Atkins, Albrecht, Bufe and Wood failed to properly monitor and reassess the Company's corporate guidelines and governance and failed to properly disclose the Company's governance weaknesses. Thus, defendants Atkins, Albrecht, Bufe and Wood face a sufficiently substantial likelihood of liability for their breach of fiduciary duties, rendering any demand upon them futile.

106. As a result of: (a) their access to and review of internal corporate documents; (b) conversations and connections with other corporate officers, employees and directors; and (c) attendance at management and Board meetings, each of the Director Defendants knew the adverse non-public information regarding SunPower's business, operations and management. Indeed, each of the Director Defendants knew of and/or directly benefited from the wrongdoing complained of herein. Thus, each Director Defendant faces a sufficiently substantial likelihood of liability for their breach of fiduciary duties, rendering any demand upon them futile.

107. Each of the Director Defendants authorized and/or permitted the false

statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various improper statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them. Thus, they face a sufficiently substantial likelihood of liability for their breach of fiduciary duties, rendering any demand upon them futile.

108. Any suit by the current directors of SunPower to remedy these wrongs would likely expose the Individual Defendants and SunPower to further violation of the securities laws that would result in additional civil actions being filed against one or more of the Individual Defendants. The Individual Defendants' conduct is already the subject of multiple securities class actions. Thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

109. SunPower has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not filed any lawsuits against themselves or the others who were responsible for that wrongful conduct to attempt to recover for SunPower any part of the damages SunPower suffered and will suffer thereby. Thus, they face a sufficiently substantial likelihood of liability for their breach of fiduciary duties, rendering any demand upon them futile.

110. If SunPower's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duties alleged in this Complaint by Director & Officer Insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders. However, Plaintiff is informed and believes that the Director & Officer

- 46 -

1   Insurance policies covering the Individual Defendants in this case contain provisions that

2   eliminate coverage for any action brought directly by SunPower against these defendants,

3   known as the "insured versus insured exclusion." As a result, if these directors were to sue

4   themselves or certain of the officers of SunPower, there would be no Director & Officer

5   Insurance protection, and thus, this is a further reason why the Director Defendants will not

6   bring such a suit. On the other hand, if the suit is brought derivatively, as this action is

7   brought, such insurance coverage exists and will provide a basis for the Company to

8   effectuate recovery from policies if a particular defendant is unable to pay the Company for

9   the damages he, she or it caused.

11      111.    The acts complained of constitute violations of the fiduciary duties owed by

12  SunPower's officers and directors and these acts are incapable of ratification.

14                                  **COUNT I**
            **AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY**

15      112.    Plaintiff repeats and realleges each and every allegation contained above as if

16  fully set forth herein.

17      113.    The Individual Defendants owed and owe SunPower fiduciary obligations. By

18  reason of their fiduciary relationships, the Individual Defendants owed and owe SunPower the

19  highest obligation of good faith, fair dealing, loyalty and due care.

20      114.    The Individual Defendants violated their fiduciary duties of care, loyalty and

21  good faith by causing or allowing the Company to disseminate to SunPower shareholders

22  materially misleading and inaccurate information through, *inter alia*, SEC filings, press

23  releases, and other public statements and disclosures as detailed herein. Further, each of the

24  Individual Defendants failed to correct the Company's publicly reported financial results and

25  guidance. These actions could not have been a good faith exercise of prudent business

26  judgment.

27      115.    As a direct and proximate result of Defendants' foregoing breaches of fiduciary

28

                                    - 47 -

1  duties, the Company has sustained significant damages, as alleged herein.

2                                    **COUNT II**
   **AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR**
3        **FAILING TO MAINTAIN ADEQUATE INTERNAL CONTROLS**

4       116.   Plaintiff incorporates by reference and realleges each and every allegation set
5  forth above, as though fully set forth herein.

6       117.   As alleged herein, each of the Defendants (and particularly the Audit Committee
7  members) had a fiduciary duty to, *inter alia*, exercise good faith to ensure that the Company's
8  financial statements were prepared in accordance with GAAP, and, when put on notice of problems
9  with the Company's business practices and operations, exercise good faith in taking appropriate
10 action to correct the misconduct and prevent its recurrence.

11      118.   The Individual Defendants willfully ignored the obvious and pervasive problems with
12 SunPower's accounting and internal control practices and procedures and failed to make a good faith
13 effort to correct the problems or prevent their recurrence.

14      119.   As a direct and proximate result of Defendants' foregoing breaches of fiduciary
15 duties, the Company has sustained significant damages, as alleged herein.

16                                   **COUNT III**
   **AGAINST THE INSIDER SELLING DEFENDANTS FOR BREACH OF**
17 **FIDUCIARY DUTY FOR INSIDER SELLING AND MISAPPROPRIATION OF**
                                  **INFORMATION**
18
19      120.   Plaintiff incorporates by reference and realleges each and every allegation set
   forth above, as though fully set forth herein.
20
21      121.   At the time of the stock sales set forth herein, the Insider Selling Defendants
   were in possession of material, adverse, non-public information described above, and sold
22
   SunPower common stock on the basis of such information.
23
24      122.   The information described above was proprietary non-public information
   concerning the Company's financial condition and future business prospects. It was a
25
   proprietary asset belonging to the Company, which the Insider Selling Defendants used for
26
   their own benefit when they sold SunPower common stock.
27
28

1    123. At the time of their stock sales, the Insider Selling Defendants knew that the
2    Company's forecasts were materially overstated and SunPower's business prospects were
3    much bleaker than what was disclosed to the public because of accounting errors in the
4    Company's COGS. The Insider Selling Defendants' sales of SunPower common stock while
5    in possession and control of this material adverse, non-public information was a breach of
6    their fiduciary duties of loyalty and good faith.

7    124. Since the use of the Company's proprietary information for their own gain
8    constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is
9    entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants
10   obtained thereby.

11   125. Plaintiff on behalf of SunPower has no adequate remedy at law.

12                                    **COUNT IV**
      **AGAINST THE INSIDER SELLING DEFENDANTS FOR VIOLATION OF**
13                  **CALIFORNIA CORPORATIONS CODE § 25402**

14   126. Plaintiff incorporates by reference and realleges each and every allegation set
15   forth above, as though fully set forth herein.

16   127. At the time that the Insider Selling Defendants sold their SunPower common
17   stock as stated herein, they were officers, directors or controlling persons of SunPower or
18   other persons whose relationship to SunPower gave them access, directly or indirectly, to
19   material information about SunPower not generally available to the public.

20   128. The Insider Selling Defendants sold SunPower securities at a time when they
21   knew material information about SunPower—gained from their relationships at SunPower—
22   that would have significantly affected the market price of SunPower common stock and was
23   not generally available to the public.

24   129. The Insider Selling Defendants knew these facts were not intended to be
25   available to the public. Had such information been generally available to the public, it would
26   have significantly reduced the market price of SunPower common stock.

27   130. The Insider Selling Defendants had knowledge of material, adverse, non-public
28

1  information and sold their SunPower  common stock in violation of California Corporations
2  Code § 25402.

3  131.  The Insider Selling Defendants are liable to SunPower  for damages in an
4  amount up to three times the difference between the price at which the security was purchased
5  or sold and the market value which the security would have had at the time of the purchase or
6  sale if the information known to Insider Selling Defendants had been publicly disseminated
7  prior to that time and a reasonable time had elapsed for the market to absorb the
8  information—pursuant to California Corporations Code § 25502.5.

9  132.  On information and belief, Plaintiff alleges that SunPower has total assets in
10  excess of one million dollars and has a class of equity security held of record by 500 or more
11  persons.

12  133.  The Insider Selling Defendants are also liable for reasonable attorney's fees and
13  costs under California Corporations Code § 25502.5.

14                                    **COUNT V**
          **AGAINST ALL DEFENDANTS FOR VIOLATION OF CALIFORNIA**
15                       **CORPORATIONS CODE § 25403**

16  134.  Plaintiff incorporates by reference and realleges each and every allegation set
17  forth above, as though fully set forth herein.

18  135.  Individual Defendants, through their positions, possessed control and influence
19  over Insider Selling Defendants' sale of common stock in violation of California law.
20  Defendants are liable under California Corporations Code § 25403 to the same extent that
21  Insider Selling Defendants are liable under California Corporations Code § 25402.

22  136.  Defendants were aware of Insider Selling Defendants' improper insider sales of
23  SunPower common stock, and Defendants used their control and influence to help Insider
24  Selling Defendants.

25                                    **COUNT VI**
          **AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT**
26
27  137.  Plaintiff incorporates by reference and realleges each and every allegation set

28

                                        - 50 -

1  forth above, as though fully set forth herein.

2  138. By their wrongful acts and omissions, Defendants were unjustly enriched at the
3  expense, and to the detriment, of SunPower.

4  139. Plaintiff, as a shareholder and representative of SunPower, seeks restitution
5  from the Defendants, and each of them, and seeks an order of this Court disgorging all profits,
6  benefits and other compensation obtained by the Defendants, and each of them, from their
7  wrongful conduct and fiduciary breaches.

8  140. Plaintiff on behalf of SunPower has no adequate remedy at law.

9  **COUNT VII**
**AGAINST ALL DEFENDANTS FOR WASTE OF CORPORATE ASSETS**

10

11  141. Plaintiff incorporates by reference and realleges each and every allegation
contained above, as though fully set forth herein.

12

13  142. As a result of the improper accounting, and by failing to properly consider the
interests of the Company and its public shareholders by failing to conduct proper supervision,
14  the Individual Defendants caused SunPower to waste valuable corporate assets by paying
15  incentive based bonuses and stock option grants to certain of its executive officers and
16  directors and incur potentially hundreds of millions of dollars of legal liability and/or legal
17  costs to defend defendants' unlawful actions.

18  143. As a result of the waste of corporate assets, the Individual Defendants are liable
19  to the Company.

20  **PRAYER FOR RELIEF**

21  WHEREFORE, Plaintiff prays for relief, as follows:

22  A. A judgment against all Defendants and in favor of the Company for the amount of
23  damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary
24  duties and aiding and abetting breach of fiduciary duty;

25  B. A determination that the alleged insider trading herein violated California
26  Corporations Code and awarding SunPower damages as a result thereof;

27

28

- 51 -
SHAREHOLDER DERIVATIVE COMPLAINT

C.     Directing SunPower to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect SunPower and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

- a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

- a proposal to strengthen the Company's internal controls over financial reporting and specifically with respect to COGS;

- a provision to permit the shareholders of SunPower to nominate at least two candidates for election to the Board;

- a proposal to ensure the accuracy of the qualifications of SunPower's directors, executives and other employees;

- a proposal to strengthen the Company's procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal controls and auditing matters; and

- appropriately test and then strengthen the internal audit and control functions.

D.     Extraordinary equitable and/or injunctive relief as permitted by law and equity;

E.     Awarding to SunPower restitution from the Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

F.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.     Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 17, 2009

Respectfully Submitted,

JOHNSON BOTTINI, LLP
FRANK J. JOHNSON
FRANCIS A. BOTTINI, JR.
BRETT M. WEAVER

FRANCIS A. BOTTINI, JR.

501 W. Broadway, Suite 1720
San Diego, CA 92101
Telephone: (619)230-0063
Facsimile: (619)238-0622

Attorneys for Plaintiff

SHAREHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

I, David Clarke, hereby verify that I am a shareholder of SunPower Corporation (the "Company"), and I have held my shares of Company stock continuously since November 18, 2005—the date I purchased them. I am ready, willing, and able to pursue this action in the hope of improving the Company and recovering damages for the Company caused by the defendants' conduct. I reviewed the allegations made in this Shareholder Derivative Complaint and to those allegations of which I have personal knowledge I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. I received a copy of this Complaint, and after reviewing it with my counsel, I hereby authorize its filing.

Date: 12 17-09

David Clarke

- 1 -